Earl TRUMBULL, (Plaintiff) Appellant,

v.

Gertrude TRUMBULL, (Defendant) Respondent.

No. 31650.

St. Louis Court of Appeals.

Missouri.

July 20, 1965.

Blumenfeld, Abrams & Daniel, H. Jackson Daniel, St. Louis, for appellant.

Frank W. Tomasso, John W. Barry, St. Louis, for respondent.

RUDDY, Judge.

This is an action by plaintiff (appellant) seeking a judgment of partition and sale of a piece of real estate owned by plaintiff and defendant who were husband and wife. Plaintiff relied on a decree of divorce obtained in the State of Nevada to sever the marital tie and contended that the real estate was held by him and defendant as tenants in common. The trial court entered judgment for defendant, thereby holding that the real estate sought to be sold was held by plaintiff and defendant as tenants by the entirety and not as tenants in common. Plaintiff appeals.

The facts, circumstances and proceedings out of which the present action arose had their beginning on August 8, 1961, when the wife, defendant herein, filed an action against the plaintiff herein in the Circuit Court of the City of St. Louis for separate maintenance. On September 18, 1961, plaintiff herein and defendant in the separate maintenance action filed his answer and a cross bill for divorce. In the cross bill for divorce he alleged that he was a resident of the City of St. Louis, State of Missouri,

and that he had resided in the State of Missouri for a period of one whole year and more next before the filing of his cross bill for divorce. Subsequently, the wife, plaintiff in the maintenance suit, filed a motion for temporary support and maintenance pendente lite and it was sustained. She was allowed $20 per week for each of the two minor children and $20 per week for her own maintenance, plus $150 attorney fees on account and $25 court costs. On March 15, 1962, the petition for separate maintenance and the cross bill of plaintiff herein for divorce were heard and submitted to the trial court. On May 9, 1962, the wife was granted a decree of separate maintenance with custody of the two minor children and plaintiff herein was ordered to pay his wife $20 per week for the support of each of the two minor children and $20 per week for her maintenance, plus an additional $100 as and for attorney fees and plaintiff herein was denied a divorce on his cross bill. On May 18, 1962, the huband, plaintiff herein, filed a motion for new trial in the maintenance action, and on July 2, 1962 his motion for new trial was sustained on the ground that the decree and judgment of the court were contrary to law. The case, consisting of the petition of the wife for separate maintenance and the cross bill of plaintiff herein for divorce, is still pending in the Circuit Court of the City of St. Louis, Missouri.

Shortly after July 2, 1962, plaintiff herein left St. Louis and went directly to Reno, Nevada. Before he left for Reno, Nevada, he was employed by the S. C. Sachs Electric Company. He testified in the instant action that his doctor had advised him "for the sake of my nerves and arthritic condition" to get away from the situation that was present in St. Louis. He made inquiry at the Union Hall in St. Louis as to where he might obtain work in a drier climate and rather strangely, but somewhat fortuitously for him, he was told by the Union officials to go to Reno, Nevada; that there was work there for the summer months. It seems that he was also told by the Union officials that there was work obtainable in Arizona and Colorado, but for a reason, which will appear later, he sought the judicial climate of Nevada. Immediately upon reaching Reno, Nevada, plaintiff herein contacted John Phillip Vyrne, Business Manager for the Electrical Workers Union in Reno. Plaintiff told Vyrne that he wished to take up residence in the State of Nevada and Vyrne accommodated him by obtaining board and room in a boarding house on Kenstone Avenue in Reno. Shortly thereafter Vyrne was able to place plaintiff in a position with a local electrical contractor. Almost immediately after arriving in Reno, Nevada, plaintiff instituted proceedings there for a divorce. At the hearing for the divorce in Nevada Mr. Vyrne continued his accommodations and appeared as a witness who testified plaintiff actually and physically resided in the State of Nevada from July 24, 1962, up to and including the date of the hearing for divorce.

Plaintiff in his testimony in the instant case said that while in Reno he lived at a rooming house at 1750 Kenstone Avenue and that Margaret Maupin, who was from St. Louis and whom he later married, and her daughter resided at the same rooming house. It seems that plaintiff and Margaret Maupin left the rooming house and moved elsewhere and when plaintiff was asked under what circumstances he and Mrs. Maupin left the rooming house he answered: "We didn't want to live there any more. Q. Were you requested to leave, you and Mrs. Maupin? A. No." He said that while in Reno he worked as an electrician and that he obtained his job through the Union office in Reno.

On October 3, 1962, plaintiff herein appeared in the Second Judicial District Court of the State of Nevada in and for the County of Washoe. There he was represented by an attorney. A transcript of the testimony taken at that hearing was introduced in evidence in the present case. This transcript of the proceedings of that day shows that the defendant (wife) in said divorce proceeding and defendant in the in-

stant case did not appear "in this action." Thereafter, the court dictated into the record the following: "Miss Clerk, you may enter the default of the defendant for failure to appear and plead, after being personally served outside the State of Nevada." At this point we interpolate the information that the wife was served with a copy of the summons and complaint by registered mail. She filed no answer in the proceedings and did not contest the proceedings in any respect. In the divorce proceedings in Nevada plaintiff testified that he took up his residence in the State of Nevada on July 24, 1962, at 1750 Kenstone Avenue and that he moved from the Kenstone Avenue address to 5430 South Virginia, Reno, Nevada, and that he resided in Nevada "about six weeks."

In the divorce proceedings the following questions were asked and answers given: "Q. And from the 24th day of July, 1962 up to and including the present date have you been actually physically present in the State of Nevada during all of that period of time? A. Yes I have. * * * Q. When you came to the state of Nevada was it your intention to make this state your home for an indefinite period of time? A. Yes. Q. Has that intention remained with you during all of the time that you have resided here in the state of Nevada? A. Yes, it has. Q. Is that your present intention? A. Yes, it is." He further testified that he had been employed as an electrician in Washoe County, Nevada, since shortly after his arrival in Reno. He testified that he was married to the defendant in St. Louis, Missouri, on July 21, 1943, and that there were three children born of the marriage; that two of the children, daughters, were with the mother and that the son, Terry, was residing with him in Reno and was present in the courtroom at the time of the hearing. We will omit the testimony supporting his grounds, contained in his petition for divorce. A certified copy of the "Findings of Fact, Conclusions of Law and Decree of Divorce" were in evidence in the instant case. In there is a finding by the

court that the plaintiff appeared personally and by his attorney "and it appearing that the defendant had been served with a copy of the Summons and Complaint on the 10th day of September, 1962, and her default having been regularly entered," thereafter, the court found that the allegations of the complaint were true and that plaintiff was entitled to an absolute and final decree of divorce from defendant upon the ground of defendant's cruelty to plaintiff. Thereafter, the court ordered, adjudged and decreed a divorce and granted custody of Terry, the son, to plaintiff and the court in its judgment made no determination with reference to the custody of the two minor daughters stating, "because the children are not within the jurisdiction of the court and the defendant has failed to make an appearance." However, the court in the Nevada divorce proceedings ordered the plaintiff to pay to the defendant wife the sum of $50 per month per child for the support and maintenance of the two minor daughters.

In the instant (partition) action plaintiff was asked the following questions and gave the following answers concerning his testimony in the Nevada divorce proceedings: "Q. While you were in Reno at this trial did you disclose to them anything about a case pending in St. Louis that you recall? A. To my lawyer. Q. To your lawyer or to the Court? A. I did. Q. Who did you tell it, to the court or to the lawyer? A. Both." An examination of the transcript of the testimony of plaintiff taken in the Nevada divorce proceedings shows that he made no disclosure to the court about the pending separate maintenance suit of his wife and the cross bill for divorce that he had filed in the maintenance action. The day following the entry of plaintiff's decree of divorce in Nevada, he married Margaret Maupin in Reno, Nevada. When asked "Where does she (Margaret Maupin) originate from?" he answered, "From St. Louis." He denied that the two of them went to Reno together but admitted they both lived in the same rooming house.

In the instant proceeding plaintiff further testified that he left Reno, Nevada, on the 10th of October, 1962, and that he and his boy (and we suspect his newly acquired wife) took a tour through the Grand Canyon and parts of California, explaining "we took a round about trip back, to enjoy a little scenery." He denied that he was in St. Louis on October 7, 1962. While he said he left Reno, Nevada, on October 10, and took the round-about trip back to St. Louis, he also said, when asked when he returned to St. Louis, that it "roughly, is some place around the 10th (October)." In this connection we note here that he signed the petition in the instant (partition) action and swore to it before a Notary Public in the County of St. Louis, Missouri, on the 9th day of October, 1962, and said petition was filed in the Circuit Court of the City of St. Louis on October 10, 1962. According to his testimony, after he returned to St. Louis from Reno, Nevada, he has worked in St. Louis. His first employer after he returned to St. Louis was E. R. Belz Electric Company. He indicated that his health improved immediately after the decree of divorce was entered. In his testimony in the instant case plaintiff acknowledged that his wife had filed a suit for separate maintenance and that he had filed a cross bill for divorce. When asked if he knew whether or not the suit for separate maintenance and the cross bill for divorce were still pending he said, "I understand it was set aside the one time. Whether or not it is legally pending or not I don't know." On October 10, 1962, plaintiff filed an amended answer in the separate maintenance suit denying the jurisdiction of the Circuit Court of the City of St. Louis over the matters contained in said suit for the reason that on October 3, 1962, he had been granted a divorce in the State of Nevada. Attached to his amended answer was a certified copy of the findings of fact and conclusions of law and decree of divorce. On December 12, 1962, defendant herein and plaintiff in the separate maintenance action filed a reply in the separate maintenance action to the amended answer of the defendant in

that action alleging that the court in the State of Nevada did not have jurisdiction over either of the parties, "the plaintiff not being a resident of Nevada and the defendant went to Nevada for the sole purpose of establishing a pretended residence in order to obtain a divorce and thereby defeat immediately any judgment which may be rendered against him in this suit; * * *." It was further alleged in said reply that because of the representation of the husband, plaintiff in the instant case, that he was a resident of Nevada, he was guilty of fraud in the procurement of the Nevada decree and that this fraud precluded recognition of the decree as a valid judgment. On July 11, 1963, plaintiff filed in the separate maintenance suit his motion to dismiss the petition of his wife, plaintiff in said suit. On November 18, 1963, the said motion to dismiss was argued and submitted and on December 16, 1963, it was overruled. As a consequence there is still pending in the Circuit Court of the City of St. Louis the original suit for separate maintenance filed by the wife and the cross bill for divorce filed by the husband in said maintenance suit. Defendant in the instant action filed an answer similar in all respects to the reply that she filed in the separate maintenance action to the amended answer of the defendant therein, her husband. She alleged that if her husband secured a decree of divorce in the State of Nevada, the court granting said decree did not have jurisdiction over either of the parties and that her husband had not been and never was a resident of the State of Nevada and that he went to Nevada for the sole purpose of establishing a pretended residence in order to obtain a divorce and thereby defeat immediately any judgment which may be rendered against him in the separate maintenance action pending in Missouri.

Plaintiff in this action relies upon the "full faith and credit" clause of the Constitution of the United States, Art. 4, § 1 which provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of

every other State." He contends that the trial court below was required to recognize the rebuttable presumption of validity of the decree of divorce entered October 3rd, 1962, by the Second Judicial Court of the State of Nevada. He further contends that the wife, defendant in this action, has utterly failed to destroy this presumption of validity by introducing clear and convincing proof to the contrary and therefore she has failed to meet her burden of proof and that the Nevada divorce decree must stand as valid.

We said in the case of Coffey v. Coffey, Mo.App., 71 S.W.2d 141, 1. c. 142:

" * * * When a husband and wife have separated and one of the parties becomes a resident of a state, or has his domicile therein, he or she may apply to the court of the state having jurisdiction over that party as a citizen thereof, and the court may dissolve the marriage, although the other spouse has never been within the jurisdiction of that state and owes no allegiance to it. The status or condition of marriage is therefore necessarily held to be a thing, within the meaning of the law, that is attached to citizenship, or a domiciled person in the state, and the jurisdiction grows out of that thing. Brown on Jurisdiction (2d Ed.) § 78, p. 291."

This is on the theory that each state has the right to determine the marital status of its own residents. Therefore, where a court of another state having jurisdiction to do so grants a decree of divorce which is valid in every respect within the jurisdiction of that state, it is presumed valid in every other jurisdiction. It has been the consistent policy of the courts of this state to give full faith and credit to the decrees of divorce of sister states and to recognize the validity of such foreign divorces. Wright v. Wright, 350 Mo. 325, 165 S.W.2d 870; Howard v. Strode, 242 Mo. 210, 1. c. 225, 146 S.W. 792, 797; Howey v. Howey, Mo., 240 S.W. 450, and Hanna v. Hanna,

224 Mo.App. 1142, 32 S.W.2d 125. Where this state through its policy gives full faith and credit to the decree rendered by a court of record and of general jurisdiction of another state, the presumption is that such court had authority to render the judgment in question and that the necessary jurisdiction was acquired properly. Howard v. Strode, supra; Williams v. Williams, 53 Mo.App. 617. And as said by the Supreme Court of the United States in Cook v. Cook, 342 U.S. 126, 1. c. 128, 72 S.Ct. 157, 1. c. 159, 96 L.Ed. 146:

" * * * A judgment presumes jurisdiction over the subject matter and over the persons. See Titus v. Wallick, 306 U.S. 282, 287, 59 S.Ct. 557, 560, 83 L.Ed. 653. As stated for the Court by Justice Stone in Adam v. Saenger, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649, 'If it appears on its face to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself.' "

What is accorded the decree is a prima facie validity which means that there is a rebuttable presumption that the decree is valid. This presumption, of course, includes the presumption that the court had full and adequate jurisdiction to grant a divorce and as applied to the instant case that the plaintiff herein had a domicile within the jurisdiction of the State of Nevada and that there was proper process and service of process. However, as we said, the presumption that attaches to the validity of a divorce decree of a sister state is a rebuttable presumption that the decree is valid and the decree may be attacked directly or collaterally in another jurisdiction. The full faith and credit clause relied on does not prevent an inquiry into the jurisdiction of the court which rendered the judgment. The courts of this state are not conclusively bound by a finding of the state granting the decree of divorce that the plaintiff had a domicile within that state but the

courts of this state may find that there was no such domicile.

In the case of Leichty v. Kansas City Bridge Co., 354 Mo. 629, 190 S.W.2d 201, the Supreme Court held that the judgment of a sister state may be assailed collaterally on evidence dehors the record and that such a judgment of a sister state can be attacked collaterally for want of jurisdiction of the subject matter or the parties. A judgment under attack in the aforesaid case was a divorce decree obtained in the State of Kansas.

In the case of Wright v. Wright, supra, a direct attack on a Nevada decree of divorce was upheld and the court refused to recognize the decree of divorce obtained in the Nevada court as a bar to a judgment of maintenance obtained in this state. The court refused to give the Nevada decree full faith and credit because it found that the defendant went to Nevada, not for the purpose of making that state his home permanently or indefinitely, but for the sole purpose of establishing a pretended residence in order to obtain a divorce.

A leading case in this area of the law is Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577. In that case the Supreme Court of the United States upheld the authority of the State of North Carolina to refuse to give full faith and credit to a Nevada divorce decree because, contrary to the findings of the Nevada court, North Carolina found that no bona fide domicile was acquired in Nevada. In a concurring opinion by Mr. Justice Murphy in the aforesaid case he said:

"* * * Thus the court below properly concluded that Nevada was without jurisdiction so as to give extraterritorial validity to the divorce decrees and that North Carolina was not compelled by the Constitution to give full faith and credit to the Nevada decrees. North Carolina was free to consider the original marriages still in effect, the Nevada divorces to be in-valid, and the Nevada marriage to be bigamous * * *." (325 U.S. 1. c. 241, 65 S.Ct. 1. c. 1100).

Also see Cook v. Cook, supra.

In the principal opinion in the Williams case the court said:

"In short, the decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicil is a jurisdictional fact. To permit the necessary finding of domicil by one State to foreclose all States in the protection of their social institutions would be intolerable." (325 U.S. 1. c. 232, 65 S.Ct. 1. c. 1096).

The court further said at 1. c. 233, 65 S.Ct. 1. c. 1097:

"What is immediately before us is the judgment of the Supreme Court of North Carolina. * * * We have authority to upset it only if there is want of foundation for the conclusion that that Court reached. The conclusion it reached turns on its finding that the spouses who obtained the Nevada decrees were not domiciled there. The fact that the Nevada court found that they were domiciled there is entitled to respect, and more. The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant. But simply because the Nevada court found that it had power to award a divorce decree cannot, we have seen, foreclose re-examination by another State."

As we have shown, the burden of undermining the decree of a sister state rests upon the person who attacks it and, as said above, this burden "rests heavily upon the assailant." A want of domicile in the divorce state, which is asserted for the purpose of avoiding the decree, must be established by clear and convincing evidence, or by the clearest and most satisfactory evidence. Wright v. Wright, su-

pra; Williams v. Williams, 53 Mo.App. 617; Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157; Williams v. State of North Carolina, supra; 17A Am.Jur., Divorce and Separation, § 957, pp. 139, 140.

We think this burden may be met if it is shown that the plaintiff concealed and withheld facts from the court in Nevada or gave false testimony concerning his intention to remain permanently or for an indefinite period of time in the State of Nevada, which testimony goes to the very heart of the question whether or not the court of the sister state had jurisdiction over his person. If the Nevada court did not have such jurisdiction, the decree may be found invalid.

The judicial power or jurisdiction to grant a divorce is founded on domicile. Where a person seeks a divorce outside of the state in which he and his wife have lived and maintained their marriage, the other state can only grant a divorce of validity where the applicant has a bona fide domicile in that state. Applied to the instant case, plaintiff's residence in Nevada for six weeks must be accompanied by a bona fide intention to make Nevada his home and to remain there permanently or at least for an indefinite time, as required even by Nevada law. Williams v. State of North Carolina, supra.

In the case of Wright v. Wright, supra, the Supreme Court of this state said:

"It is universally held that 'a state cannot exercise through its courts jurisdiction to dissolve a marriage when neither spouse is domiciled within the state.' Restatement of the Law, Conflict of Laws, page 168, sec. 111. See also, Vol. 9, R.C.L., page 399, sec. 195. 'It is a well established proposition that, where one spouse goes to a state or country other than that of the matrimonial domicile for the sole purpose of obtaining a divorce and there obtains a divorce under a residence simulated for that purpose and not bona fide or in good faith or with any intention of residing there permanently or indefinitely, the judgment is not binding on the courts of other states or nations or the District of Columbia.' 27 C.J.S., page 1291, Divorce sec. 332, subsec. b. See also Annotations in 39 A.L.R., page 677, and 105 A.L.R. 817." (165 S.W.2d 1. c. 875).

It is well settled that a divorce decree entered in a state in which neither of the parties has a domicile at the time the suit is commenced is void for lack of jurisdiction, and is not entitled to full faith and credit in other states. It is a prerequisite to the validity of a divorce decree that at least one of the parties to the suit must have a domicile within the state awarding the decree. Phelps v. Phelps, 241 Mo.App. 1202, 246 S.W.2d 838.

From what we have said it is clear that the question of whether or not plaintiff in the instant action had a bona fide domicile within the State of Nevada at the time he obtained his decree of divorce is open to attack, notwithstanding the full faith and credit clause, inasmuch as a bona fide domicile is necessary to the jurisdiction of the Nevada court, if plaintiff perpetrated a fraud upon that court by inducing it to believe that he was a bona fide resident of the State of Nevada, whereas he was not, then the Nevada court did not have jurisdiction to enter the decree of divorce.

The question for decision at this point is did plaintiff have a bona fide domicile in the State of Nevada for six weeks prior to October 3, 1962, when he obtained his decree of divorce. In the course of this opinion we have used the word "resident" in the same sense as the word "domicile."

In order for a change of domicile to take place it is necessary that there shall be actual personal presence in the new place and also the present intention to remain there, either permanently or for an indefinite time, without any fixed or certain

purpose to return to the former place of abode. The fact of physical presence and the intention must concur. In re Toler's Estate, Mo., 325 S.W.2d 755, 1. c. 759; Nolker v. Nolker, Mo., 257 S.W. 798; Phelps v. Phelps, supra. In the case of Williams v. State of North Carolina, supra, the Supreme Court of the United States said: "Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance." (325 U.S. 1. c. 229, 65 S.Ct. 1. c. 1095).

In the case of Phelps v. Phelps, 246 S.W. 2d 1. c. 845, the court, quoting from another case, said:

" 'The statutory terms "resident" or "residence," as used in divorce statutes, contemplate, as we think, an *actual residence* with substantially the same attributes as are intended when the term "domicile" is used. *They do not mean the place where the defendant in fact resides for the time being. They mean a residence of a permanent and fixed character, a domicile.'* " (last emphasis ours).

In the Phelps v. Phelps case, the court further said: "Mere temporary absence from the state, without any intention of remaining away, does not cause a person to lose his (or her) residence within the meaning of the divorce laws." (246 S.W.2d 1. c. 845).

 The question of intent is to be gathered largely from the acts and utterances of the person whose domicile is under question, and the declarations of the person and the acts made before, at, and after the time the domicile is in dispute may be considered, In re Toler's Estate, supra. The intent formed to establish a residence cannot be for a mere special or temporary purpose. In the case of State of Missouri, upon Information of Reardon, v. Mueller, Mo.App., 388 S.W.2d 53, 1. c. 59, we quoted from the case of State v. Savre, 129 Iowa 122, 105 N.W. 387, 3 L.R.A.,N.S. 1. c. 458,

as follows: " 'A person cannot live in one place and by force of imagination constitute some other his place of abode; * * the actual place of residence controls, and *one cannot be improvised by merely forming an intention to claim it elsewhere.'* " One cannot through a mere mental gymnastic fix in his mind a place of residence to serve a temporary advantage and when the advantage has been consummated, by the same mental gymnastic, reverse his intention as to residence. The intention required under the law is one that is formed in good faith to remain in the place of his actual personal presence, either permanently or for an indefinite period of time, and without any fixed or certain purpose to return to the former place of abode.

 When we give effect to the facts, circumstances, proceedings, acts and statements of the plaintiff herein, we reach the same conclusion as did the trial court, that plaintiff at the time he went to Nevada and at the time of his divorce proceedings had no intention to remain there either permanently or for an indefinite period of time and that his acts and conduct therein constituted a fraud on the Nevada court that deprived that court of jurisdiction of plaintiff's divorce proceedings. It is clear from the record in this case that immediately after obtaining his decree of divorce, plaintiff abandoned all idea that he resided in the State of Nevada.

 We think the reason given by plaintiff for leaving St. Louis, namely, that he did so for the sake of his nerves and arthritic condition and that it was necessary for him to seek a drier climate is a fabrication and beyond belief. If this reason for leaving St. Louis was true, he would have accepted the work offered him in the State of Arizona where we understand the climate is the driest, but, as we have indicated, he sought the favorable judicial climate of Nevada. It is obvious from his subsequent conduct that he went to Reno, Nevada, for the sole purpose of obtaining a divorce and not for any healing effect

the climate of that area may produce. His heart may have received some healing effect and surcease from its throbbing for Margaret Maupin who also found her way into Reno, Nevada, from St. Louis, Missouri. In furtherance of the purpose for his trip he contacted the business manager for the Electrical Workers Union who, upon plaintiff's suggestion, obtained board and room in a rooming house for the purpose of taking up residence in the State of Nevada. Thereafter, plaintiff moved from the first rooming house to another rooming house and he freely admits that Margaret Maupin lived at the same rooming house on Kenstone Avenue in which he lived, and when he moved from that rooming house she also left it and moved to the other rooming house where plaintiff lodged. When asked why he left the first rooming house, he answered, "We (plaintiff and Margaret Maupin) didn't want to live there any more." The fact that he and Margaret Maupin lodged in rooming houses is some indication that he did not intend to reside in Nevada either permanently or for an indefinite period of time. Plaintiff obtained his decree of divorce on October 3, 1962, and on the very next day he married Margaret Maupin who had come from St. Louis, Missouri, to Reno, Nevada, for the obvious purpose of being near the plaintiff prior to obtaining his decree of divorce and for the ultimate purpose of entering into marriage with him at the earliest possible moment after his decree was entered. She must have known, as plaintiff knew, that neither one of them intended to stay in the State of Nevada and that plaintiff had the intention of immediately returning to the City of St. Louis after the marriage ceremony where both had their legal residence, which return trip took place sometime between October 4, 1962, and October 9, 1962. The total time that elapsed from the time plaintiff left St. Louis to the time he returned to St. Louis was approximately two and one-half months. On October 3, 1962, in a Nevada court, he testified that it was his intention to make Nevada his home for an indefinite period of time. We think this testimony was an obvious fraud perpetrated upon the Nevada court, because his conduct and acts immediately following the granting of the decree of divorce showed clearly that he had no such intention. According to our calculations he left Nevada for his roundabout way home to St. Louis just several days after he obtained his decree of divorce in that state. He instituted a suit for divorce in Nevada and gave the testimony that he intended to make that state his home for an indefinite period of time with the knowledge that he had a suit in the form of a cross bill for divorce pending in the City of St. Louis, wherein he had alleged that he was a resident of the State of Missouri. Since his return to St. Louis, Missouri, he has been employed there. We think the record before us shows that plaintiff went to the State of Nevada for the sole purpose of obtaining a divorce and there obtained a divorce under a residence simulated for that purpose and that he had no intention of residing there permanently or indefinitely and that both he and Margaret Maupin intended to return to their former place of abode, namely, St. Louis, Missouri. He cannot, as we have pointed out, obtain a place of residence to serve a mere temporary advantage and when the advantage has been served and consummated, reverse his intention as to residence. We think his acts and conduct in the respects mentioned constituted a fraud on the Nevada court that deprived that court of jurisdiction of his divorce proceedings and that Margaret Maupin was co-conspirator in this direction.

In Wright v. Wright, 165 S.W.2d l. c. 875, under a similar state of facts, the court said:

"We think the evidence in this case conclusively shows that defendant went to Nevada, not for the purpose of making that state his home permanently or indefinitely, but for the sole purpose of establishing a pretended residence in order to obtain a divorce and thereby defeat the judgment rendered against him in Missouri. The evidence also

justified the chancellor in finding that defendant, knowing that he was not a bona fide resident of Nevada, falsely represented to the court that he was a resident of that state and thereby induced the court to take jurisdiction of his case. We hold that such conduct amounts to fraud in the concoction or procurement of the Nevada decree which prevents its recognition as a valid judgment, * * *."

In the case of Wagoner v. Wagoner, 287 Mo. 567, 229 S.W. 1064, the husband sought to bar the wife's recovery of money due her under a judgment for maintenance and filed a motion setting up as a bar to the judgment a decree of divorce that he had obtained in the District Court of Nevada for the County of Washoe dissolving the bond of matrimony between him and his wife. In the wife's answer thereto she pleaded fraud and perjury in the act of procuring the judgment in Nevada affecting the jurisdiction of the Nevada court. According to the record in that case the husband took up his residence in Nevada in January of 1916. On November 21, 1916, he obtained a decree of divorce and a week or two after the decree was entered he returned to St. Louis from Reno, Nevada. The record showed that he had determined to take up his residence in Reno, Nevada, upon arriving there and that when he returned to St. Louis he considered St. Louis as his home. These facts are not unlike the facts in the instant case. The court in ruling on the Wagoner case said:

"That the respondent was ever domiciled in Nevada is too absurd for serious consideration. The only evidence of the fact is his own statement that when he arrived there in January, 1916, he thought he would make it his home. After remaining six months as the law required as a condition precedent to his suit for divorce, he filed his complaint for that purpose, and the proceeding so instituted proceeded with celerity to final decree, upon which he promptly left. His citizenship began for the accomplishment of that purpose and ended with it. It applied to no other phase of respondent's life or activity than the act of which it constituted a part." (229 S.W. 1. c. 1069).

The court found that the Nevada court was induced by actual fraud to assume jurisdiction of the divorce proceedings.

A celebrated case that virtually parallels the factual aspects of the instant case is that of Williams v. State of North Carolina, supra, decided by the Supreme Court of the United States. In that case the Supreme Court had before it a review of judgments of conviction for bigamy against a man and a woman. Both of the parties were married and had spouses when they left the State of North Carolina. The Supreme Court said:

"* * * that the petitioners left North Carolina for the purpose of getting divorces from their respective spouses in Nevada and as soon as each had done so and married one another they left Nevada and returned to North Carolina to live there together as man and wife. Against the charge of bigamous cohabitation * * * petitioners stood on their Nevada divorces and offered exemplified copies of the Nevada proceedings. * * * (As to petitioner Hendrix these included the pleadings, evidence and decree. As to petitioner Williams essentially the same evidence with respect to his domicil is in the record from witnesses in this case. It shows when Williams left North Carolina, when he arrived in Nevada, the prompt filing of his divorce suit (Nevada requires six weeks' residence prior to filing a suit for divorce), marriage to petitioner Hendrix immediately after petitioners were divorced, and his prompt return to North Carolina. * * *)" (325 U.S. 1. c. 235, 65 S.Ct. 1. c. 1097).

The Supreme Court of the United States in commenting upon the actions and conduct of the petitioners said:

"* * * What it shows is that petitioners, long-time residents of North Carolina, came to Nevada, where they stayed in an auto-court for transients, filed suits for divorce as soon as the Nevada law permitted, married one another as soon as the divorces were obtained, and promptly returned to North Carolina to live. It cannot reasonably be claimed that one set of inferences rather than another regarding the acquisition by petitioners of new domicils in Nevada could not be drawn from the circumstances attending their Nevada divorces. It would be highly unreasonable to assert that a jury could not reasonably find that the evidence demonstrated that petitioners went to Nevada solely for the purpose of obtaining a divorce and intended all along to return to North Carolina. *Such an intention, the trial court properly charged, would preclude acquisition of domicils in Nevada.* See Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758. And so we can not say that North Carolina was not entitled to draw the inference that petitioners never abandoned their domicils in North Carolina, *particularly since we could not conscientiously prefer, were it our business to do so, the contrary finding of the Nevada court.*" (Emphases ours) (325 U.S. 1. c. 236, 237, 65 S.Ct. 1. c. 1098).

The Supreme Court of the United States upheld the conviction against both parties for bigamy, thereby holding that the North Carolina Courts were correct in saying that the petitioners had not established a bona fide domicile in the state of the court purporting to dissolve their prior legal marriages. It would be difficult to find a case with facts more closely akin to the facts of the instant case than the case of Williams

v. State of North Carolina discussed aforesaid.

We hold that the trial court could have reasonably found that the evidence before it in this case demonstrated that plaintiff went to Nevada solely for the purpose of obtaining a divorce and intended all along to return to St. Louis, Missouri, with his newly acquired spouse.

In opposition to the above authorities and in support of his contention that we should give full faith and credit to the Nevada decree of divorce, plaintiff relies on the case of Keller v. Keller, 352 Mo. 877, 179 S.W. 2d 728. The factual aspects of the Keller case readily distinguish it from the aforesaid authorities. In the Keller case the husband, the respondent in the case, obtained a decree of divorce in the State of Nevada. The wife, appellant, in her petition asked to have the decree of divorce set aside and in the second count of the petition asked for separate maintenance. The trial court sustained a demurrer to her petition and she appealed. Appellant in her petition pleaded the law of Nevada in which the Nevada courts hold that they do not have jurisdiction to grant a divorce decree in cases where the parties seeking it established a residence solely for the purpose of obtaining a divorce. The court, in commenting upon the contents of the petition, said:

"It will be noted that she alleged she testified in the trial of the case in the Nevada court. It is, therefore, apparent that appellant had her day in the Nevada court on the question of whether her husband was a bona fide resident of that state. In other words the Nevada court decided the question against appellant either rightly or wrongly, but whether rightly or wrongly the question was decided. It was a question of fact and appellant stated she testified in the case. Therefore, if this case were to be heard on plaintiff's petition the issue to be tried would be one which the

Nevada court decided on conflicting evidence. To retry that issue would amount to ignoring the U. S. Const. Art. IV, sec. 1. The question sought to be placed in issue by appellant's petition must be regarded as res judicata. The United States Supreme Court expressly so held in the case of Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518. We must, therefore, hold that under the facts as pleaded by appellant we are bound to give full faith and credit to the judgment entered by the Nevada court, and that the trial court correctly sustained the demurrer to appellant's petition." (179 S.W.2d l. c. 731).

■ In other words, after a contest and after the parties have had an opportunity to present their contention, the matter cannot again be relitigated as between the parties. This applies also to jurisdictional questions. Williams v. State of North Carolina, supra; Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157; 17A Am.Jur., Divorce and Separation, Sec. 967, p. 150.

■ The record in the instant case shows that the question of residence was not litigated in the Nevada court by the wife, defendant herein, and therefore the question of plaintiff's residence in Nevada is not res judicata.

As an additional factor we remark that we think it was the plaintiff's duty to disclose fully to the Nevada court the history and circumstances of the pending litigation in St. Louis, Missouri, consisting of his wife's suit for separate maintenance and his cross bill for a divorce. We think that if he was acting in good faith with the Nevada court he would have disclosed the fact that a judgment had been rendered in favor of his wife for separate maintenance and

a denial of his cross bill for divorce, even though this judgment was subsequently set aside.

The Nevada court should have been given an opportunity to consider the circumstances of the pending litigation and its possible effect on the action in the Nevada court. In the case of State of Missouri ex rel. Miller v. Jones, Mo.App., 349 S.W.2d 534, l. c. 539, we, under somewhat similar facts, quoted from 1 Am.Jur., Abatement and Revival, Sec. 39, p. 44, the following:

" * * * the court in which the second action is brought may in its discretion stay or suspend that suit, awaiting decision in the first one, or, influenced by a spirit of comity, may refuse to entertain it, if the same relief may be awarded in the prior suit."

The transcript of the evidence adduced in the Nevada divorce proceedings shows that he made no such disclosure. Despite this, with what appears to be his continued disregard for the truth, he told the court in the instant action that he had made a disclosure to the Nevada court. This testimony given in the instant action is as devoid of truth as was his testimony concerning his residence when given in the divorce proceedings in the State of Nevada.

■ Inasmuch as the trial court failed to give full faith and credit to the Nevada decree of divorce, in which action we concur, the title to the real estate sought to be partitioned is held by plaintiff and defendant as tenants by the entirety and, therefore, not subject to partition.

The judgment of the trial court should be affirmed. It is so ordered.

WOLFE and ANDERSON, JJ., concur.