Shirley M. RILEY et al., Plaintiffs,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 78–1026–CV–W–5.

United States District Court, W. D. Missouri, W. D.

Sept. 12, 1980.

Michael L. Sexton, Kansas City, Kan., for plaintiffs.

Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

This action is brought under the provisions of 42 U.S.C. § 405(g) to review a final decision of the defendant denying the plaintiffs benefits under the Survivorship section of the Social Security Act, as amended, 42 U.S.C. § 402. Defendant has moved for summary judgment and plaintiffs have filed a brief in support of their claims. For the reasons stated below, defendant's motion for summary judgment is denied, and this cause is remanded to the Administrative Law Judge for further findings in accordance with this opinion.

After the death of her husband, plaintiff Shirley Riley applied on behalf of herself and her six children for Social Security benefits. The Social Security Administration determined that the claimants were entitled to benefits, and benefits were awarded. On January 5, 1977, a Reconsideration Determination was issued which terminated Shirley's benefits and reduced her six children's benefits, because the Administration had found that the deceased's first wife, Elnora Riley, and her three children were entitled to benefits. Shirley and her children appealed this decision, and a hearing was held before Administrative Law Judge, Charles N. Bono. The ALJ found that Shirley was not entitled to benefits because Elnora was the legal widow of the deceased wage earner, and that Shirley's children's benefits should be reduced because Elnora's children were also entitled to benefits. On October 16, 1978, the Appeals Council of the Social Security Administration affirmed the ALJ's decision, which thereby became the final decision of the Secretary. Plaintiffs, Shirley and her children, seek judicial review of that decision.

The form and scope of judicial review of the defendant's actions is statutorily defined and limited. Under 42 U.S.C. § 405(g), the Secretary's decision is conclusive upon the Court if it is supported by substantial evidence. *Alexander v. Wein-*

*berger,* 536 F.2d 779 (8th Cir. 1976); *Yawitz v. Weinberger,* 498 F.2d 956, 957 (8th Cir. 1974). This standard of substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Russell v. Secretary of HEW,* 540 F.2d 353, 356 (8th Cir. 1976); *Brinker v. Weinberger,* 522 F.2d 13, 17 (8th Cir. 1975).

After reviewing the entire record, the Court finds that the decision of the Secretary is not supported by substantial evidence and merits the description of being arbitrary and capricious.

The record, taken as a whole, supports the following facts. The deceased wage earner, Robert Riley, was married to Elnora Watkins Riley on October 4, 1947, in Natchez, Mississippi. Robert and Elnora lived as husband and wife in Vidalia, Louisiana and had one child, Jacintha Riley, born January 19, 1948. In either 1951 or 1952, Robert began living with Shirley Hauer, plaintiff in this action. While it is not completely clear when Robert stopped living with Elnora, the record supports the reasonable inference that he stopped living with Elnora prior to the time he began living with Shirley. On an application for Aid to Dependent Children, Elnora listed Clarence Watkins as the father of her son born in 1951, Willie Brown as the father of her daughter born in 1955, Willie McKee as the father of her daughter born in 1957, and Dan White as the father of her twin sons born in 1959. (Exhibit 39.) Although this evidence does not conclusively prove that Robert no longer lived with Elnora, it strongly substantiates Shirley's testimony that Robert did not keep company with Elnora after he began living with Shirley.

In 1959, Robert and Shirley moved from Louisiana to Kansas and then in 1961 moved to Kansas City, Missouri. In 1962, Robert filed a petition for divorce in the State of Kansas against Elnora, but failed to proceed any further with it. In August 1972, he filed a second petition for divorce in Kansas against Elnora, and she was served with process in the State of Louisiana.

On September 20, 1972, the State of Kansas granted Robert an emergency decree of divorce, and in January 1973, he married Shirley in Kansas City, Missouri. Shirley and Robert had six children during the course of their twenty–two–year union.

In January 1973, Robert filed an application for a period of disability and disability insurance benefits. He listed Shirley as his wife, and he listed their six children, Robert, Jr., Rose, Darlene, Caroletta, Jackie, and Calvin. On December 2, 1973, Robert Riley, Sr. died. Thereafter, Shirley received mother's insurance benefits as the surviving widow of Robert, and her six children received children's benefits.

On February 13, 1974, Elnora Watkins Riley filed for mother's insurance benefits as the widow of Robert Riley and also filed for children's benefits for her three children, Alvin, Calvin and Tyberia.

Elnora's application prompted the Social Security Administration to undertake an investigation to determine who was the legal widow of Robert Riley. After searching the divorce records in several jurisdictions and finding no divorce decree terminating the marriage between Robert and Elnora, the Administration terminated Shirley's benefits and reduced her children's benefits upon the finding that Elnora was the legal widow of Robert and that she and her children were entitled to benefits.

Shirley and her children challenged this finding, and a hearing was held before an Administrative Law Judge on April 11, 1978. Shirley produced the 1972 Kansas divorce decree which terminated the marriage between Elnora and Robert. The ALJ, however, concluded that the Kansas divorce decree was invalid because Robert had not been a bona fide resident of Kansas, and, therefore, the State of Kansas was without jurisdiction to grant him a divorce. The ALJ's decision upheld the finding of the Administration that Elnora was the legal widow of Robert. The ALJ further concluded that Elnora's three children, Alvin, Calvin, and Tyberia,[1] were the legal children of Robert because they had been

born during the valid marriage of Robert and Elnora, and the benefits of Robert's and Shirley's children were reduced proportionately.

The issues presented at the Administrative hearing were the following: (1) who is the legal widow of the deceased wage earner, Robert Riley, and (2) are Elnora's children entitled to benefits as the children of Robert Riley?

■ The second issue was not discussed by the ALJ, who presumed Elnora's children to be children of Robert Riley because a child is presumed to be the legitimate child of a husband if born or conceived during a valid marriage and would, therefore, be entitled to inherit the husband's intestate personal property. This Court recognizes that this presumption is one of the strongest known to law, but it is not irrebuttable. Evidence was presented at the hearing which raises very serious doubts about whether Robert was the natural father of Elnora's three children. Elnora admitted on an application for Aid to Dependent Children that the father of Alvin and Calvin was one Dan White. (Exhibit 39.) Tyberia was born in 1972, more than ten years after Robert permanently left the jurisdiction where Elnora resided. Whether this evidence is sufficient to rebut the presumption of legitimacy was not briefed by the parties, nor was it discussed by the ALJ in his findings. The Social Security Act, 42 U.S.C. § 416(h)(2)(A), provides that

[i]n determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death . . .

---

1. Alvin and Calvin, twins, were born in 1959, and Tyberia was born in 1972.

The parties have agreed that Robert was domiciled in the State of Missouri at the time of his death, and, therefore, Missouri law would apply.

Upon remand, the ALJ should examine the law of Missouri to see if the Missouri courts would recognize Elnora's three children as the children of Robert Riley. If not, the ALJ should grant Elnora and her children an opportunity to present evidence to show that Alvin, Calvin and Tyberia are in fact Robert's children and would be entitled to inherit Robert's intestate personal property under the laws of Missouri. If they fail to sufficiently establish that fact, then the award of benefits should be terminated as to these three children, and an overpayment of benefits should be assessed pursuant to 42 U.S.C. § 404. The back benefits which were denied Shirley's children as a result of the Administration's decision should be awarded pursuant to the same section.

The central issue in this case is which one of Robert's wives is his legal widow. Under 42 U.S.C. § 416(h)(1)(A) of the Social Security Act, marital status is determined, inter alia, by the finding of a valid marriage between the applicant and the wage earner under the law of the state where the wage earner was domiciled at the time the application for benefits was filed on his behalf, or under the law of the state where he was domiciled at the time of his death. The parties both agree that Robert Riley was domiciled in Missouri at the time of his death, and, therefore, Missouri law applies.

█ The question is whether Missouri would give full faith and credit to the Kansas divorce decree obtained by Robert in 1972. It is well settled in Missouri that a divorce decree of a sister state may be collaterally attacked for want of jurisdiction over the subject matter or parties. *Leichty v. Kansas City Bridge Company*, 354 Mo. 629, 190 S.W.2d 201 (En banc 1945), *cert. denied, Kansas City Bridge Company v. Leichty*, 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009 (1946) One of the parties must be a bona fide resident of the state rendering the divorce decree in order for the di-

vorce decree to be valid. If neither party is domiciled in the state rendering the judgment, the decree is void for lack of jurisdiction and is not entitled to full faith and credit in other states. *Leichty v. Kansas City Bridge Company, supra; Trumbull v. Trumbull*, 393 S.W.2d 82 (Mo.App.1965). But, the burden of undermining a divorce decree rendered by a sister state rests heavily upon the person who attacks it. *Venator v. Venator*, 512 S.W.2d 451 (Mo.App. 1974); *Trumbull v. Trumbull, supra*. Lack of jurisdiction "must be established by clear and convincing evidence, or by the clearest and most satisfactory evidence." *Trumbull v. Trumbull*, 393 S.W.2d at 89.

In this case, the real party–in–interest in challenging the decree was Elnora. She did not attend the hearing, and she presented no evidence. The Social Security Administration attempted to carry her burden for her and undertook an investigation. After reviewing the evidence produced by their own investigation, they determined that they had met their burden of proof, and with a stroke of the pen, the Administration voided the Kansas divorce decree, voided Robert's second marriage, and forever labeled Robert's six children by Shirley as bastards.

█ A decision with such profound and far–reaching consequences should be supported by evidence so clear and convincing that no reasonable doubt could exist that the circumstances might be otherwise. The ALJ stated in his findings that "[t]here is more in the record to establish Missouri residence than Kansas." But, want of domicile must be established by more than just a preponderance of the evidence, it must be established by clear and convincing evidence.

In reaching his decision, the ALJ relied upon the following facts:

(1) Robert owned a home in Missouri where all of his children lived and where he made regular visits;

(2) In March, 1973, Robert filed his 1972 income tax return and gave his Missouri address;

(3) Robert and Shirley listed a Missouri address when they were married in January, 1973; and

(4) Robert listed a Missouri address on his application for disability insurance benefits in January, 1973.

This evidence only supports the conclusion that Robert was domiciled in Missouri in the early part of 1973, and it falls far short of convincing this Court that Robert was not domiciled in Kansas prior to his divorce.

Under the laws of Kansas, jurisdictional requirements are satisfied for entry of a valid divorce decree if one of the parties is domiciled in Kansas for a period of six months prior to filing the divorce petition. Robert filed for divorce in August, 1972, and Kansas granted an "emergency" decree of divorce [2] in September, 1972. Therefore, the relevant time period is six months prior to August, 1972.

Shirley testified at the Administrative hearing that she and Robert began living with her aunt in Kansas in February, 1972. This living arrangement enabled Shirley to take care of her aunt and Robert, who were both seriously ill at this time. Although their children remained living in Missouri, Shirley testified that she and Robert were indeed residing in Kansas.

Domicile is governed by intent, and "[t]he intention required under the law is one that is formed in good faith to remain in the place of his actual personal presence, either permanently or for an indefinite period of time, and without any fixed or certain purpose to return to the former place of abode." *Trumbull v. Trumbull*, 393 S.W.2d at 91. *See also*, *Venator v. Venator, supra*. Shirley testified that during the relevant time period, Robert was physically present in Kansas. The only evidence of his intent is Shirley's testimony that Kansas is where she and Robert were living during this time. It is also clear from Shirley's testimony that Robert lived in Kansas for a reason other than that of obtaining a divorce, and that he intended to stay in Kansas for an indefinite period of time. The fact that they continued to live with her aunt in Kansas for some time after the divorce was granted supports this contention. The evidence is not sufficient to show that during the relevant six–month period Robert intended to return to his Missouri address. Intent is to be proved from the acts and utterances of the person whose domicile is in question. *Venator v. Venator, supra*. Lapse of time and the fact that Robert is dead increases the difficulty of proving Robert's intent during this time. However, Elnora was served with process to the divorce proceedings, and she had over a year before Robert died to challenge the validity of the divorce decree. Had she chosen to act sooner, her burden would not be so onerous.

This Court concludes that the record does not establish by clear and convincing evidence that Robert was domiciled in Missouri rather than Kansas. On the contrary, the record could just as easily support a finding that Robert was domiciled in Kansas, particularly in light of the rule followed by Missouri "that as against any collateral attack every presumption will be indulged in favor of the jurisdiction of the court over the subject matter and of the persons, unless the record affirmatively shows to the contrary." *Orrick v. Orrick*, 241 Mo.App. 143, 233 S.W.2d 826, 828 (1950). There is no defect on the face of the Kansas divorce decree in this instance, and every presumption should be indulged that the Kansas court had jurisdiction.

Upon remand, the ALJ should give Elnora the opportunity to show by clear and convincing evidence that Robert was not, in fact, domiciled in Kansas for the six–month period prior to filing his petition for divorce.

But the inquiry cannot stop here. Missouri recognizes the defense of laches to an attack on the validity of a divorce decree. *Beasley v. Beasley*, 553 S.W.2d 541 (Mo. App.1977); *Zahorsky v. Zahorsky*, 543

---

**2.** The State of Kansas granted Robert an emergency divorce decree because of his failing health.

S.W.2d 258 (Mo.App.1976). Elnora must also show that Missouri would not bar her challenge to the Kansas divorce decree because of laches. The ALJ concluded in his findings that Elnora would not be barred by laches because she had filed for Social Security benefits within three or four months after Robert's death. There are two serious defects in this reasoning. First, Elnora's right to challenge the divorce decree did not arise upon Robert's death, but upon entry of the divorce decree. There was actually a lapse of seventeen months between the entry of the divorce decree and Elnora's application for benefits. Second, the mere fact of filing for Social Security benefits hardly constitutes an attack upon a foreign divorce decree, particularly in light of Elnora's subsequent actions. Although the burden of attacking Robert's divorce was on her, Elnora waived her right to be present at the hearing, and she produced no evidence. The Social Security Administration was the force behind challenging and attacking the decree. In truth, it can be said that to this day Elnora has never actively pursued an attack on the validity of the Kansas divorce decree, and the ALJ cannot state with any certainty that the courts of Missouri would not bar Elnora because of laches. Therefore, Elnora carries the additional burden of showing that she would not be barred by laches from attacking the decree.

Accordingly, this case should be remanded for further findings to determine whether Elnora's children, Alvin, Calvin, and Tyberia, are truly entitled to benefits, and to give Elnora an opportunity to establish whether Robert was domiciled in Missouri or Kansas during the relevant time period and to show that she would not be barred by laches from attacking the Kansas divorce decree. If Elnora fails to carry her burden, the decision of the Secretary should be reversed, and all back benefits which were denied to Shirley and her children should be awarded, and an overpayment of benefits should be assessed against Elnora and her children pursuant to 42 U.S.C. § 404.

For the reasons stated, it is hereby

ORDERED that this cause is remanded to the Administrative Law Judge for further action in accordance with this opinion. Costs will be assessed against the defendant.