**Natasha SMITH, Respondent,**

v.

**Jose DELEON, Appellant.**

**No. ED 104734**

Missouri Court of Appeals, Eastern District, DIVISION TWO.

FILED: September 5, 2017

FOR APPELLANT: Gary M. Siegel, Kimberly M. Metzger, 231 South Bemiston Avenue, Suite 910, St. Louis, MO 63105.

FOR RESPONDENT: William G. Buchholz II, 401 Chez Paree, Hazelwood, Missouri 63042.

ROY L. RICHTER, Judge

Jose DeLeon ("Husband") appeals from the trial court's judgment granting Natasha Smith's ("Wife") Motion for Entry of a Qualified Domestic Relations Order ("Motion for QDRO") in the amount of $1,437,077.37. We reverse and remand.

## I. Background

On February 14, 1985, Husband and Wife were married in the Dominican Republic, where both were born citizens. Two children were born of the marriage.

Husband and Wife lived in a rented apartment in St. Louis County, Missouri, from March 10, 1988, until October 23, 1988, while Husband worked in St. Louis, but the parties returned to their Dominican Republic apartment in October 1988. The parties did not retain their apartment in St. Louis County or any other residence in Missouri.

On January 3, 1989, Husband and Wife separated and Husband commenced a divorce action in the Dominican Republic. A divorce decree ("1989 Decree") dissolving the parties' marriage was entered on July 20, 1989, by the Civil Chamber of Commerce and Labor of the Court of First Instance of the Judicial District of La Vega. The decree awarded Wife custody and guardianship of the parties' two children.

On May 4, 1989, in between the parties' separation and the entry of the 1989 Decree, Wife returned to Missouri and on June 16, 1989, filed for legal separation. Wife then filed an amended petition re-

questing dissolution of marriage on August 22, 1989, arguing that Husband's divorce decree in the Dominican Republic was procured by fraud. Wife's amended petition was denied following an appeal, and the parties appealed the divorce decree in the Dominican Republic in February 1992. The parties agreed to a new divorce agreement ("1992 Agreement"), which was registered with the clerk of court in the Dominican Republic. Terms of the 1992 Agreement included: (1) "The marriage was dissolved by Judgment No. 1277, dated July 20th of the year nineteen hundred and eighty nine (1989) . . . ;" (2) The parties "formally and expressly desist to all legal proceedings in all National Court as well as courts in the United States of America;" (3) Husband will pay child support of $5,000 per month; (4) Wife will not file or pursue any new cause of action arising out the parties' marriage, except for a cause of action to enforce this agreement if necessary. The 1992 Agreement was certified and registered by the Clerk of the Court of Appeals of the Judicial Department of La Vega, but did not include a judge's name or signature.

In February 1995, Husband stopped paying Wife support, and Wife filed for registration of the 1992 Agreement in St. Louis County Circuit Court on October 17, 1996. Wife attempted to notify Husband of the registration of foreign judgment by requesting the circuit clerk mail notice to two addresses: "Jose DeLeon, County of La Vega, Dominican Republic" and "Jose Deleon (sic) Chestaro, c/o Tony Chricosta, 4133 Cedar Creek Rd., Boca Raton, FL 33487." The notice mailed to Husband's agent, Tony Chricosta ("Agent"), was returned to the circuit clerk as undeliverable. The record contains no indication that the notice sent to Husband's incomplete address was ever received.

Wife moved to Virginia in or around 2000 where she attempted to collect child support from Husband through the Department of Social Services, and a withholding order was sent to Husband's employer. While maintaining residency in Virginia, Wife again attempted to collect child support in Virginia circuit court in 2003 and 2009. The Virginia circuit court entered a QDRO and corrective QDRO in 2003 and 2009 allowing Wife to collect unpaid child support payments from Husband's pension payments made by his employer; however, Husband's employer refused to honor the withholding order or either Virginia QDRO. Wife has maintained residence in Virginia through the time of this appeal, and Husband has resided in the Dominican Republic since his retirement in or around 1996.

On November 15, 2012, Wife file her Motion for QDRO in the St. Louis County Circuit Court. Husband's motion to dismiss for lack of personal and subject matter jurisdiction was granted by the Family Court Commissioner. Upon rehearing of the commissioner's judgment and trial, the St. Louis County Circuit Court reversed the dismissal of Wife's Motion for QDRO and entered judgment granting Wife's Motion for QDRO in the amount of $1,430,077.39, reflecting the amount of money unpaid by Husband in child support and related interest. This appeal follows.

## II. Discussion

Husband raises seven points on appeal. First, Husband claims that the trial court erred in finding that it had personal and subject matter jurisdiction to grant Wife's Motion for QDRO based upon the registration of the 1992 Agreement from the Dominican Republic, which contains an agreement between the parties to "formally and expressly desist to all legal proceedings in

... courts in the United States of America."

Second, Husband argues that the trial court erred in granting Wife's Motion for QDRO because the court lacked subject matter jurisdiction in that the Virginia court retained jurisdiction of the parties under the QDRO entered there in 2003. Further, Husband contends that any attempt to procure a QDRO in Missouri would be barred by the doctrine of *res judicata.*

Third, Husband claims that the trial court erred in failing to grant his Motion to Dismiss because the trial court lacked personal jurisdiction under Missouri Supreme Court Rule 54.06(b) and Section 506.500(2) (RSMo. 2000) in that Wife failed to plead that either party resided in Missouri and neither party still resides in Missouri.

Husband's fourth, fifth and sixth points contend that the trial court erred in finding that it had personal jurisdiction to grant Wife's Motion for QDRO based upon her filing a petition to register an agreement from the Dominican Republic because the filing was a nullity. In his fourth point, Husband argues that the filing was a nullity because the "decree" was neither authenticated nor signed by a judge. In his fifth point, Husband claims that the filing was a nullity because no evidence was presented to support a finding that the Dominican Republic court is entitled to Full Faith and Credit in Missouri courts. In his sixth point, Husband argues that the filing was a nullity because Wife failed to comply with the notice requirements for registering a final judgment under Rule 74.14.

Seventh, and finally, Husband argues that the trial court erred in its calculations of child support awarded within the final judgment and QDRO because the 1992 Agreement was not revived at any time

prior to 2009 pursuant Section 516.350 (RSMo. 2000); therefore, Missouri law was incorrectly applied to calculate the child support owed and date of termination because Dominican Republic law was applicable.

## A. Registration of Foreign Judgment

Husband argues that the trial court erred in finding that it had personal jurisdiction to grant Wife's Motion for QDRO pursuant to her petition to register a foreign judgment because the filing of registration of foreign judgment was null. Husband first claims that Wife's filing of registration of the 1992 Agreement was null because she did not send notice of the filing of registration of foreign judgment to Husband's last known post office address as required by Rule 74.14. Husband further argues that the filing was null because the 1992 Agreement was neither authenticated nor signed by a judge in the Dominican Republic.

### 1. Standard of Review

■ A circuit court's decision to register a foreign state's judgment under Rule 74.14 is a legal conclusion, which we review *de novo.* The Cadle Co. II, Inc. v. Hubbard, 329 S.W.3d 706, 709 (Mo. App. S.D. 2010) (citing Miller v. Dean, 289 S.W.3d 620, 624 (Mo. App. W.D. 2009)).

### 2. Notice of Filing of Registration of Foreign Judgment

In order to file and record a foreign judgment in Missouri, a judgment creditor must register the judgment in accordance with Rule 74.14. Pursuant to Rule 74.14(c), a creditor is required to provide notice of a foreign judgment filing:

(1) At the time of the filing of the foreign judgment, the judgment creditor or his lawyer shall make and file with

the clerk an affidavit setting forth the name and **last known post office address** of the judgment debtor and the judgment creditor.

(2) Promptly upon the filing of the foreign judgment and the affidavit, the clerk shall mail notice of the filing of the foreign judgment to the judgment debtor at the address given and shall make a note of the mailing in the docket.... Lack of mailing notice of filing by the clerk shall not affect the enforcement proceedings if proof of mailing by the judgment creditor has been filed.

(emphasis added).

■ The purpose of Rule 74.14(c) is to give the judgment debtor notice of the filing of the foreign judgment. Cadle, 329 S.W.3d at 710. Strict compliance with the statutory requirements set out by the legislature is necessary to confer jurisdiction upon the trial court. Am. Indus. Res., Inc. v. T.S.E. Supply Co., 708 S.W.2d 806 (Mo. App. 1986).

Wife relies on Cadle in arguing that compliance with Rule 74.14's notice provision was not necessary because Husband failed to appear and testify that he did not have actual notice. In Cadle, the circuit clerk mailed two debtor-defendants a notice of registration of foreign judgment to their full and shared mailing address. Cadle, 329 S.W.3d at 708. Although one debtor's copy of the notice of filing was missing from the court's file, the circuit clerk noted individual certified-mail return receipts from both debtors. Id. Further, an attorney entered his appearance for the debtors and filed objections on their behalf a week after the clerk documented the return receipts. Id. at 710. The court determined that the debtor was not prejudiced by any failure to provide notice because the debtor had actual notice of the filing of registration of the foreign judgment as demonstrated by his attorney's entry of appearance. Id.

■ Cadle, however, is inapplicable to the present case because there was no evidence that Husband had actual notice of Wife's filing of registration of the 1992 Agreement in St. Louis County Circuit Court. Contrary to Wife's argument, Husband's failure to enter an appearance or testify about lack of notice does not create a presumption of actual notice. Unlike Cadle, the clerk received no notification that either Husband or Agent had received notice of registration of the foreign judgment. Conversely, the clerk received notification that Agent never actually received the notice because it was returned as undeliverable.

Here, in an attempt to comply with Rule 74.14(c), Wife filed an affidavit listing two addresses for notifying Husband of her request for registration of the 1992 Agreement in St. Louis County. While the clerk properly sent notification based on the addresses provided by Wife, neither of the addresses listed a full post office address for Husband as required by Rule 74.14(c)(1). One address listed on the affidavit was to Agent located in Boca Raton, Florida, which was returned to the clerk as undeliverable. Regardless, Agent was only Husband's representative for employment purposes. Agent never represented Husband in any previous divorce proceedings and was unrelated to any previous decrees or agreements between the parties. The second address simply contained Husband's name and "County of La Vega, Dominican Republic." Husband's Dominican Republic address did not include a street address or street number; instead, Wife merely listed Husband's name, home country, and a foreign county with a current population of more than 440,000.

■ Wife's vague mailing address circumvents the purpose of Rule 74.14 be-

cause it did not give Husband notice of the filing of the foreign judgment. Without any evidence of actual notice, Wife's incomplete post office address for Husband and undeliverable notice to Agent failed to meet the notice requirements of Rule 74.14(c). Accordingly, Husband's sixth point is granted and the trial court's entry of a Qualified Domestic Relations Order is reversed.

### 3. Authentication of 1992 Agreement

This Court previously recognized Husband and Wife's 1989 Decree entered in the Dominican Republic and acknowledged that the decree was entitled to full faith and credit in Missouri. In re Marriage DeLeon, 804 S.W.2d 801, 804 (Mo. App. E.D. 1991). The court specified that when a foreign court of record with general jurisdiction "grants a decree of divorce which is valid in every respect within the jurisdiction of the state, it is presumed valid in every other jurisdiction."[1] Id. at 803. "What is accorded the decree is a prima facie validity which means that there is a rebuttable presumption that the decree is valid." Id. (citing Trumbull v. Trumbull, 393 S.W.2d 82, 88 (Mo. App. 1965)).

Here, the 1992 Agreement was unsigned by a judge in the Dominican Republic. The only signature present on the 1992 Agreement was by a clerk of the court. Further, despite referencing the parties' 1989 dissolution, the original 1989 Decree was not included as an exhibit in the registration of the 1992 Agreement. The only apparent authentication of the Agreement is a statement that the parties appeared before attorney Manual Ramone Espinal Ruiz and a certification of the Subdirector of Consular Department's signature and seal by a Vice Consul of the United States.

Because we find lack of sufficient notice dispositive, we need not ultimately determine whether the 1992 Agreement was properly authenticated. However, we note concerns with the authenticity of the unsigned 1992 Agreement.

### III. Conclusion

We reverse the trial court's judgment entering a Qualified Domestic Relations Order and remand with instructions that the trial court deny the Qualified Domestic Relations Order for failure to provide proper notice of registration of a foreign judgment.

Lisa P. Page, P.J., concurs.

Philip M. Hess, J., concurs.

---

1. This Court cited 50 C.J.S. Judgments, Section 904 p. 540 (1947), in applying the full faith and credit clause to the Dominican Republic divorce decree: "While the full faith and credit clause of the deferral constitution has no application to foreign (country) judgments, as a general rule ... state and federal courts give recognition and force and effect to judgments obtained in foreign countries to the same extent as in the case of judgments of sister states on the basis of comity."