**Gladys LOTT, (Plaintiff) Appellant,**

v.

**Norman M. KJAR, Administrator of the Estate of Milton C. Kjar, (Defendant) Respondent.**

**No. 50074.**

Supreme Court of Missouri,

Division No. 1.

May 11, 1964.

Wyne & Delworth and William H. Wyne, Jr., Clayton, for appellant.

F. X. Cleary, Paul S. Brown, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

WELBORN, Commissioner.

This is a head-on automobile collision case in which the drivers of the two vehicles involved were killed. There were no other passengers in the vehicles and no witnesses to the collision. The widow of the driver of one auto sued the administrator of the estate of the driver of the other for $25,000 under the wrongful death statute (Section 537.080, RSMo 1959, V.A.M.S.) and for $3,600 damages for loss of the auto driven by her husband. The jury's verdict was for the defendant. After her motion for new trial had been overruled, plaintiff appealed to this court. In view of the amount sued for, we have jurisdiction of the appeal.

The issue presented to the jury was which driver was operating his automobile in the wrong direction at the time of the collision. The collision occurred at approximately 3:00 A.M., October 15, 1960. The automobiles involved were a 1959 Oldsmobile "white over gold" sedan, driven by plaintiff's husband, Clyde Lott, and a 1959 Ford sedan, driven by defendant's decedent and brother, Milton C. Kjar. The collision occurred in the westbound traffic lanes of U. S. Highway 40 in the vicinity of the junction and intersection of U. S. Route 40, Alternate U. S. 40 and U. S. Route 61, near Wentzville. At the point of the collision, U. S. Route 40 is a 4-lane highway, running generally east and west. There are two 24-foot paved roadways, one for westbound and one for eastbound traffic, which are separated by a median area.

At the time of the collision, the pavement was dry.

The plaintiff's case was submitted on the sole assignment of negligence on the part of Kjar in operating his Ford eastbound in the westbound traffic lane at the time of the collision. Defendant submitted the converse of plaintiff's verdict-directing instruction and also the affirmative of the issue that Lott was driving the wrong way at the time of the collision.

The plaintiff's evidence to prove her theory was the testimony of Trooper James B. Kelems of the Missouri Highway Patrol, who investigated the accident. He arrived at the scene some 25 minutes after the accident occurred and before the vehicles had been moved. He described the position of the vehicles as at an angle across both lanes of the paved portion of the westbound highway. Their front ends were together, the Oldsmobile pointed generally in a southwesterly direction and the Ford generally in a northeasterly direction. Kjar had been thrown from his car, but the location of his body was not shown. Lott had been removed from his vehicle by persons who reached the scene before the Trooper. Both died at the scene without making any statement.

Trooper Kelems testified that debris was scattered over the highway west of the location of the cars for a distance of 34 to 37 feet. There was some debris to the east, but the major portion was to the west. No skid marks were found. However, the Trooper did describe what he called "tire marks" and scratches which ran straight through the debris from the west to the Ford, a distance of 34 feet. He stated, on cross-examination, that the "tire marks" were made by the rear wheels. Except for photographs, taken the following day and showing damage to the vehicles, there was no further evidence offered by plaintiff relating to the collision itself.

The plaintiff testified that she last saw her husband when he drove her in the Oldsmobile to her work at Lambert-St. Louis.

Airport at 9:00 P.M. on October 14 and that he left there in the car, planning to return to pick up the plaintiff at around 5:00 or 5:30 the following morning when she finished work. Mrs. Lott testified that she did not know what her husband had planned to do between 9:00 P.M. and 5:00 A.M. Lambert-St. Louis Field is east of the scene of the accident.

The defendant's evidence showed that Milton Kjar, an electrician, aged 26, single, worked in St. Louis where he had a room at his brother's home. Kjar's mother lived on a farm north of Wright City, which is on Route 40, west of the scene of the collision. The defendant's evidence showed that Milton usually spent the week-end with his mother on the farm. He left his brother's house after changing clothes on his return from work Friday evening at around 7:30 P.M. He paid his union dues at the union office in St. Louis the same evening, but his whereabouts otherwise prior to the collision do not appear.

The defendant produced a witness, Robert S. Bierer, who was working at a service station about 3 miles west of the scene of the collision at the time of its occurrence. The service station is on the north side of Route 40. Bierer testified that, at around 3:00 A.M., on October 15, a colored man (Lott was a Negro) drove an Oldsmobile into the service station, purchased gasoline and asked the way to St. Louis. According to Bierer, he told the driver that he had "just come from that direction and that he would have to turn around and go back." The driver drove east through the service station property and entered the westbound lane of Route 40 and proceeded to drive east for as far as Bierer could follow him, a distance of some ¼ mile. About 15 minutes later, someone came to the service station and called the highway patrol and reported an accident. Approximately an hour later, Bierer saw an automobile which he described as "the same model and light-colored top" towed into Swantner's garage which was across the highway from the service station. Both

the Lott and Kjar cars were removed from the scene of the collision to the Swantner garage.

▮▮▮ . On this appeal, the plaintiff's first assignment of error relates to the court's exclusion of testimony proposed to be given by Trooper Kelems to show that, in the collision, the Ford automobile had pushed the Oldsmobile back a distance of some 30 feet. The complete offer of proof was as follows:

"I would offer to prove by this witness, if permitted to testify, that having had the experience in reconstructing accidents, having had the training that he has, that based upon the physical facts that he found at the scene of the accident, number one, the two vehicles still together with the front ends in a generally—the Oldsmobile facing in a generally southwesterly direction and the Ford facing in a generally northeastwardly direction and based upon the fact that there were marks, both tire marks and scratch marks from metal of the car leading directly in a straight line toward the west, a distance of thirty-four feet, based upon the fact that there was debris scattered all over the highway, including glass, mud and various metal parts of the car, that if this witness were permitted to testify, based also upon the damage to the automobiles, that he would state that the automobile was traveling in a westwardly direction and that the Ford was traveling in an eastwardly direction and that the Ford upon contact, pushed the Oldsmobile backward toward the east, a distance of approximately thirty-four feet."

In her brief, plaintiff-appellant states:

"Appellant submits that Trooper Kelems was qualified as an expert witness. It is not contended that he should have been permitted to testify to the ultimate fact of which way either car was traveling but should have

been permitted to testify to the fact that the Ford pushed the Oldsmobile backward thirty-four feet."

Of course, this position is inconsistent with a claim of error on the part of the trial court. By acknowledging that the Trooper should not have been permitted to testify to the ultimate fact of which way the cars were traveling, the plaintiff acknowledges that the offer of proof contained inadmissible matter. In such event, there can be no error in refusal of the offer. "If several facts are included in the offer, some admissible and others inadmissible, then the whole (if properly objected to) is inadmissible; in other words, it is for the proponent to sever the good and the bad parts." 1 Wigmore on Evidence (3rd ed.), Section 17, page 320. Eller v. Crowell, Mo.Sup., 238 S.W.2d 310, 313(3). Furthermore, testimony that the "Ford pushed the Oldsmobile backwards toward the east" would constitute an expression of opinion as to the direction in which the cars were traveling prior to the collision just as much as would a direct expression of an opinion directly on the subject. A direct opinion of this witness, based on the facts in evidence which he had for consideration, and considering the training and experience upon which he would have relied in expressing such opinion, would properly have been excluded. Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242; Duncan v. Pinkston, Mo.Sup., 340 S.W.2d 753.

 The plaintiff urges error in the submission of evidence on behalf of defendant to show that Milton Kjar usually spent his week-ends at the farm of his mother near Wright City, that he left his brother's house Friday evening and that he paid his union dues in St. Louis that evening. The contention is that this evidence was too remote and violated the "rule against piling an inference on an inference." The existence of the rule invoked by appellant is doubtful. 1 Wigmore on Evidence (3rd ed.), Section 41, page 435; Braun v. Roux Distributing Co., Inc., Mo.Sup., 312 S.W.

2d 758. Essentially, the question is whether or not the evidence offered is "too remote or uncertain or lacking sufficient probative force to establish or prove the ultimate fact at issue." Van Brock v. First National Bank in St. Louis, 349 Mo. 425, 161 S.W.2d 258, 261.

As Wigmore states (1 Wigmore on Evidence (3rd ed.), Section 28, pages 408–409):

"* * * (T)he question with which the law of Evidence in the strict sense has to do (that is, the rules regulating the production of evidence by opposing parties) is one of *Admissibility, not of Demonstration or Proof* * * *,— whether a particular fact is fit to be considered, and not whether it suffices for a demonstration.

"For example, the existence of a habit of doing a particular act under certain circumstances points forward to a doing of the act under those circumstances on a particular occasion. This is not a *demonstration* that the act *was* done, for the influence of the habit may have been counteracted by other considerations; there is not an invariable sequence. The jury may ultimately decide that the habit, with all the other circumstances, is not adequate to prove the doing; though the judge may at the outset have ruled that the course of conduct was at best sufficiently regular to have some value as an indication. The latter question is one of Admissibility, and under our system is a preliminary one for the judge only. The former question is one of completeness of proof; it is the final one, and is for the jury."

In view of the absence of any direct evidence as to the direction of travel by either party to the collision, we are of the opinion that the evidence to which appellant objects did have probative value on the issue of the direction of Milton Kjar's travel and afforded a reasonable basis for resolving the disputed factual issue in this case.

■ Plaintiff includes under the same objection the testimony of the filling station attendant, Bierer. However, in her motion for new trial, her objection relative to Bierer's testimony is to "statements and conversation of unknown persons." In her brief, she objects to the entire testimony of Bierer, with only passing reference to conversations. A claim of error here is limited to that advanced in the motion for new trial and we do not consider the different ground of objection urged on this appeal.

■■ Plaintiff's next objection is to the "admission of testimony that the speedometer of the Oldsmobile registered 80 miles per hour for the reason that there was no evidence that the speedometer in fact indicated the speed at or immediately preceding the collision, and was therefore irrelevant, immaterial, incompetent and permitted presumption of a condition to run backwards." Norman Kjar testified that he examined the Oldsmobile at the Swantner garage on Saturday morning and that the speedometer of the vehicle indicated a speed of 80 miles per hour. A photograph of the speedometer so indicating was introduced in evidence. In our opinion, the fact that the speedometer had stopped at this speed would be some evidence of the rate of travel of the Lott car at the time of the accident. Albrecht v. Safeway Stores, Inc., 159 Or. 331, 80 P.2d 62; Hoffman v. Atlantic Greyhound Lines, D.C., 25 F.Supp. 739; Hastings v. Serleto, 61 Cal.App.2d 672, 143 P.2d 956. Evidence that the vehicle was traveling at a high rate of speed would be relevant and material as tending to explain the location of the car following the collision with relation to the claimed direction of travel prior thereto. The speedometer recording was a matter for the jury to consider with the other evidence relative to the condition of the vehicle following the collision. In this connection, we note that plaintiff's objection is not based upon the fact that the observation of the speedometer was made the following morning rather than at the scene of the

collision. An objection on such basis might have involved additional considerations.

■ Plaintiff's next assignment of error relates to rulings of the court in overruling her objection to testimony relative to the age, occupation and marital status of Milton Kjar. The evidence objected to showed that he was 26, an electrician and unmarried. Appellant objects to the relevancy and materiality of such evidence and asserts that its only purpose was to elicit sympathy from the jury on behalf of the defendant and against the plaintiff. Just how any of the information elicited could have the effect which appellant attributes to it does not appear. In the circumstances of this case, these matters would have some bearing on the explanation of Milton's presence at the scene of the collision and the direction of his travel and could not have been merely an appeal for sympathy. Smith v. Wabash R. Co., Mo.Sup., 338 S.W.2d 16, 18–19(3, 4). Likewise, we perceive no prejudice from testimony that defendant Norman Kjar was married.

As for the same objection with respect to the mother's testimony concerning the length of her residence on the farm north of Wright City, and Milton's age and employment, plaintiff does not point out how this testimony could have had any appeal on the basis of sympathy. She objects specifically to Mrs. Kjar's testimony that the last time she saw Milton was when he left the farm to return to St. Louis the Sunday prior to the accident. At the trial, plaintiff's counsel noted that Mrs. Kjar was on the verge of tears when she gave such testimony. However, the testimony did bear on the defendant's position that Milton was on his way to Wright City at the time of the accident. We find no error in its admission.

■ Plaintiff's final assignment of error relates to the giving by the trial court of Instruction No. 4, offered by the defendant. That instruction read as follows:

"The Court instructs you that if you find and believe from the evidence that

on October 15, 1960, Milton C. Kjar was operating his automobile westwardly in the westbound lane of United States Highway 40 en route to his home in Wright City, Missouri, and if you further believe and find that Clyde Lott was operating his automobile eastwardly in the west-bound portion of the highway, then you are instructed that your verdict must be in favor of the defendant."

Plaintiff objects to this instruction on the grounds that it "is not supported by the evidence; submits a finding for defendant through the process of building an inference on an inference; fails to hypothesize facts upon which a finding can be based as to the direction of travel of either automobile; permits a recovery for defendant if the jury believes at any time on October 15, 1960, Milton Kjar was operating his automobile westwardly in the westbound lane of U. S. 40 to his home in Wright City;" that, taken with Instruction No. 3, offered by the defendant and given by the court, it amounted to a second instruction on the same theory, and "gives undue prominence to defendant."

As for the contention that the giving of the instruction was not supported by the evidence, we are of the opinion that the defendant's evidence, together with inferences favorable to defendant's position which might be drawn from plaintiff's evidence, did warrant submission of the affirmative issue of Lott's being the driver operating in the wrong direction at the time of the collision. We will not again detail such evidence. However, as set out above, we feel that it does support the giving of Instruction No. 4. What we have said previously about the admissibility of the evidence of defendant disposes of the complaint of "piling an inference on an inference." Plaintiff does not inform us just what facts she would have the instruction hypothesize insofar as direction of travel is concerned. Just as with plaintiff's verdict-directing instruction, the direction of travel, by and of itself, was the ultimate fact at issue. Its determination did not require the hypothesizing of other evidentiary facts from which such ultimate fact could be reached.

Unquestionably, Instruction No. 4 would have been in better form had it specifically been limited to the time and place of the accident in question. However, in this case, we think it quite obvious that jurors of ordinary intelligence would not have had any doubt that the instruction did so apply. The whole lawsuit was pointed to that particular occurrence. Any reasonable application of the instruction would necessarily, under the facts of this case, have limited it to the time of the collision. McVey v. St. Louis Public Service Co., Mo.Sup., 336 S. W.2d 524, 527(4).

As for the charge of repetitiousness, "mere repetition in instructions is ordinarily within the discretion of the trial court and, except in unusual cases or where so considered by the trial court, such repetitions do not constitute prejudicial error." Thayer v. Sommer, Mo.Sup., 356 S.W.2d 72, 78(8); Hanff v. St. Louis Public Service Co., Mo.Sup., 355 S.W.2d 922, 927 (7, 8). We find nothing unusual in this case such as would make repetitious instructions based on defendant's theory that defendant's deceased was not driving the wrong way at the time of the accident prejudicial. We do not agree, as appellant contends, that such instructions "gave undue prominence to defendant."

We find no error in any of the respects charged. Therefore, the judgment should be affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur, including STORCKMAN, J., sitting for DALTON, J.