**Emanuel COLEMAN, Respondent,**

v.

**PIONEER STUDEBAKER, INC., a corporation and Robert Livingston, Appellants.**

**No. 24393.**

Kansas City Court of Appeals.

Missouri.

April 4, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 6, 1966.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellants.

Leonard Rose, Sheffrey, Ryder & Skeer, Kansas City, for respondent.

HOWARD, Judge.

This is a suit for compensatory and punitive damages for the conversion of money given as a deposit on the purchase of an automobile. Trial to a jury resulted in a verdict for plaintiff in the amount of $55.00 compensatory damages (the amount of the deposit) and $2,500.00 punitive damages. We shall refer to the parties as they appeared below.

Defendants offered no evidence. Plaintiff testified in his own behalf and offered the testimony of two police officers. He also called defendant Livingston as an adverse witness. The record reveals that on Wednesday, August 17, 1963, the plaintiff went to the used car lot of the defendant, Pioneer Studebaker, Inc., and determined that he desired to purchase a 1957 Lincoln convertible. At the request of the salesman he made a $5.00 deposit, was advised that it would be necessary to check his credit and was requested to return in two days. He was told that if his credit was approved it would then be necessary to make an additional deposit of $50.00. He received a receipt for his $5.00 deposit.

Two days later, on Friday, August 19, he returned to the used car lot and dealt with a different salesman. He explained his previous transaction, and the salesman "told me O. K. I could get the car but it

would be $50.00 more". Plaintiff gave $50.00 to the salesman who took it inside the building and returned with a receipt. When he returned with the receipt the salesman advised plaintiff that the car he wanted had been sold. Plaintiff then demanded his money back, but instead of returning the money, the salesman attempted to sell plaintiff a different car. Plaintiff refused to buy any other car, but insisted that he wanted his money back. He was then advised that he could not get his money back "because the guy that unlocked the safe was not there". Then plaintiff and the salesman went inside the building and the salesman went into a back office in the building where Mr. Livingston was and then returned to plaintiff and again advised him that he could not get his money because the man who unlocked the safe was not there. He told plaintiff to come back later and plaintiff left and returned in about two hours. Plaintiff was again informed that he could not get his money because the man who opened the safe was not there. Plaintiff left, stating that he would come back the following day.

On the following day, Saturday, August 20, 1963, plaintiff returned and was again informed that he could not get his money because the man who opened the safe was not there. Plaintiff left and in two or three hours returned, and again made a demand for the return of his money. He was again informed that he could not get his money because the man who opened the safe was not there. Plaintiff then called the police.

Two policemen responded to the call and entered the building with plaintiff. The police officers testified that there were three men in the back room and when they asked for the man in charge the defendant Livingston stated that he was in charge. On the policemen's inquiry as to what the trouble was, defendant Livingston stated that it was just a small misunderstanding and that "he would recognize the $50.00 receipt". Livingston was not certain about the $5.00 receipt, but a man from another

car lot operated by the corporate defendant directly across the street, came over and advised Livingston that the $5.00 receipt was all right. Livingston then said that "he would recognize both of them" and initialed both receipts on the back. Livingston then told plaintiff that he was OKing the receipts but that plaintiff would have to go across the street to the furniture department, which was on the northeast corner of the same intersection, and the cashier would give him his money. The police then left and plaintiff proceeded across the street as directed. When plaintiff arrived at the cashier's window, a woman was ahead of him. There was some transaction between this woman and the cashier in which money changed hands. When it came plaintiff's turn at the cashier's window, the cashier told him that the man who opened the safe was not there and he could not have his money. When plaintiff turned away from the cashier's window, he saw Livingston standing a short distance behind him. Plaintiff told Livingston that he could not get his money and Livingston just looked at him and did not say anything. Plaintiff then called the police again. When one of the policemen who had been there on the first call returned, plaintiff explained the matter to him, and at that time a man who plaintiff knew only as "Don" arrived (it appears that this was Don Melching, who also was an officer of the corporate defendant), and told the police officer and plaintiff that plaintiff could not have his money because he still owed him (Don) money on a car he had previously purchased from him. The policeman then advised plaintiff to call either the city counselor's office or a lawyer and the policeman left. The police officer observed other people engaged in cash transactions with the cashier during this time.

Plaintiff then left without his money and it has never been returned to him. Plaintiff testified that the defendant Livingston was present when Don appeared on the scene and made his statements, but

the police officer did not remember him being present. Plaintiff specifically denied that the first $5.00 was paid to cover the cost of a credit check. He insisted that it was a deposit. He stated that when he made both the $5.00 deposit to the first salesman and when he gave the $50.00 to the second salesman, the salesmen took the money inside the building and into the back office where defendant Livingston was located and returned with the receipt, which was given to plaintiff. He did not see either salesman give the money to the defendant Livingston, and did not see Livingston write out either receipt. He did not overhear any conversation between either of the salesmen and Livingston. When called as an adverse witness by plaintiff, Livingston testified that he was president of Pioneer Studebaker, Inc., and as such had "chief management duties" of the corporation. He testified that the corporation engaged in the business of selling new cars, used cars, furniture, and operated a collection agency. He said he did not have any memory of this transaction and did not remember putting his initials on the back of the receipts; however, he denied telling anyone not to give plaintiff his money. He did not testify further.

▪ Defendants' brief has four points alleging error of the trial court. The first three points are each followed by the citation of one case as authority for such point. There is no citation of authority for point four. The first and third points of defendants' brief deal with error as to the individual defendant Livingston only. Point one contends that the verdict against Livingston was not supported by substantial evidence and that the court erred in overruling Livingston's motion for a directed verdict. On such allegations of error we consider the evidence in the light most favorable to plaintiff. We have heretofore set out the evidence in some detail.

▪ From the circumstances in evidence the jury was not required to believe the repeated, parrot-like recitals that the man who opened the safe was not there. This mythical man was never identified. The jury could properly have concluded that money was in fact available (various other persons were observed in transactions with the cashier wherein money changed hands) either from the open safe or from other sources. Also the jury would certainly be justified in finding that the defendant Livingston, as chief executive officer of the corporation, could open the safe or could see to it that plaintiff's money was returned to him. This money obviously belonged to plaintiff and not to defendants or either of them. This involves reasonable inferences which the jury would be justified in drawing from plaintiff's evidence concerning matters peculiarly within the knowledge of defendants and their employees. The defendants offered no evidence. Livingston did not testify except to deny any memory of the transaction, and neither he nor the corporate defendant produced Don Melching (an officer of the corporation) or any of the employees as witnesses. From this failure of the defendants to produce witnesses under their control to testify concerning such matters, it could properly be inferred that such testimony, if produced, would have been unfavorable to defendants. See Irle v. Irle, Mo.App., 284 S.W.2d 44 and cases cited therein. It was not necessary in this civil action for the jury to find a theft of the money, as was pleaded by the plaintiff, but they may well have done so. In any event it is beyond question that plaintiff's money was converted by the corporate defendant without even a scintilla of justification. The jury could also find that the defendant Livingston aided and abetted such conversion. Thus there was sufficient evidence to justify the jury's verdict and the court did not err in overruling defendant Livingston's motion for directed verdict. In reaching this conclusion, it is not necessary to base an inference on an inference as prohibited by the holding in Hays v. Hogan, 273 Mo. 1, 200 S.W. 286, L.R.A.1918C, 715, as defendants contend.

■ Point three of defendants' brief alleges that the court erred in giving instruction No. 2 as to the individual defendant Livingston because such instruction did not require a finding that Livingston acted intentionally, wilfully, knowingly or negligently. What we have heretofore said largely disposes of this contention. Defendants cite only the case of Pitcock v. Higgins, Mo. App., 239 S.W. 870 in support of this contention. This case is cited for the proposition that intention is an essential element of liability for conversion. This same case points out that such intent may be inferred from the facts and circumstances in evidence, and certainly here, the facts as set out would amply justify the conclusion of the jury that the defendant Livingston intentionally and knowingly aided and assisted in the conversion of plaintiff's money. The questioned instruction requires such a finding. Both defendants clearly acted in opposition to the rights of plaintiff concerning the money in question and were guilty of conversion. See Koch v. Branch & Crookes, 44 Mo. 542, State v. Pate, 268 Mo. 431, 188 S.W. 139, and Schulte v. Florian, Mo.App., 370 S.W. 2d 623.

■ Defendants also contend (and this contention applies to both the corporate and the individual defendants) by point two of their brief that the verdict awarding punitive damages was not supported by substantial evidence because there was no evidence of malice, wilfullness or wantonness. In support of this contention defendants cite Davis v. Nash Central Motors, Mo.App., 332 S.W.2d 475. This case is in fact authority for the proposition that the malice necessary to support an award for punitive damages is properly defined as "the intentional doing of a wrongful act without just cause or excuse". Here it is apparent that both the corporation and the defendant Livingston acted knowingly and with intent to convert plaintiff's money wrongfully, without any possible justification or valid claim thereto. They intended to deprive plaintiff of his money, and, in fact, have done so up until the present time.

It is contended that Livingston's intent to convert is negatived by the fact that Livingston approved the return of the money in his office in the presence of the policemen. The effect of his good deed is entirely dissipated by the rest of the evidence including his actions shortly thereafter, when the police had gone, and when he permitted his cashier to refuse the return of the money. Defendant also argues that the corporation claimed a set-off and thus there was no intention to convert the money. There is absolutely no evidence to support this claim of set-off. In the first place, set-off was not pleaded. In the second place defendants introduced no evidence and consequently no evidence of set-off. In the third place plaintiff's testimony, which is all the evidence there was touching that point, shows that he had not bought a car from Pioneer Studebaker, Inc., but once had bought a car from the individual named Don; that such car had been repossessed and there was no balance claimed. Thus all the evidence in the case clearly shows that there could be no claim of set-off by either the corporate defendant or by Livingston. Under these circumstances, the court properly instructed the jury on punitive damages and there was ample evidence to support the jury's verdict. It would have been astonishing if the jury had failed to return a verdict for punitive damages.

■ Point four of defendants' brief alleges error by the trial court in giving instruction No. 4 for plaintiff because said instruction allowed recovery of "all money held in opposition to plaintiff's claim" and did not require that the retention be wrongful. This instruction authorized an award of damages only if the jury found the issues in favor of the plaintiff under plaintiff's verdict directing instruction No. 2. This latter instruction required a finding that the retention was wrongful. The evidence showed beyond all possible doubt

that the retention was wrongful. No authorities are cited in support of this contention by defendants. They argue that the instruction was broad enough to allow recovery of moneys other than the $55.00 in question. This complaint is not valid because there is no evidence of any moneys, other than the $55.00, being retained. Defendants also argue that the jury might have inferred that the first $5.00 was paid by plaintiff to cover the cost of a credit check. There was no evidence to support such a conclusion. We must remember that the defendants did not produce any evidence and the plaintiff specifically testified that the $5.00 was not paid to cover the cost of the credit check but was paid as a deposit on the automobile.

From a careful study of the record in this case, we find no error. The verdict was for the proper party and the judgment rendered thereon is therefore affirmed.

All concur.