**Helen Maurine VENATOR, Plaintiff-Appellant,**

v.

**Charles A. VENATOR, Defendant-Respondent.**

No. 35735.

Missouri Court of Appeals, St. Louis District, Division One.

June 11, 1974.

Motion for Rehearing or Transfer Denied July 15, 1974.

Application to Transfer Denied Sept. 9, 1974.

Springfield Baldwin, St. Louis, for plaintiff-appellant.

Roy W. Bergmann, Clayton, for defendant-respondent.

WEIER, Judge.

This is a suit for separate maintenance wherein the plaintiff attacks collaterally a divorce decree obtained by the defendant in the State of Nevada. She seeks to be restored to all marital rights which existed between her and the defendant before the Nevada decree was entered. The court ordered Count I of plaintiff's petition attacking the validity of the Nevada divorce to be tried separately before considering the separate maintenance features of the petition, and it is from the decree of the trial court upholding the Nevada divorce that this appeal is taken.

Plaintiff and defendant were married on February 5, 1937. To this union were born three children, all of whom are now of mature years and living away from home. In July of 1966 the defendant filed a divorce suit in the circuit court of St. Louis County, Missouri, which was partially tried. On April 22, 1968, after the judge before whom the case was pending was disqualified for reasons not involving this litigation, the suit was dismissed. Before dismissing this suit, defendant had departed Missouri for Reno, Nevada on March 15, 1968. He took with him his clothes, personal records, and insurance policies. He left his automobile in St. Louis for sale. He was employed by the Post Office as General Superintendent of Mails in St. Louis, and, being on accumulated leave, had not submitted his resignation. When he left he stated that he intended to change his place of residence, seek employment at Reno, Nevada, and not return to Missouri. In support of his claimed intention to change residence, he testified that he enjoyed the climate and that the Nevada environment, conducive to the sports of fishing and hunting, caused him to want to live out there. He filed a divorce suit in Reno and, after personal service upon Mrs. Venator in Missouri, he obtained a decree of divorce at Reno on May 21, 1968. He then continued to stay in Reno until June 1st when he returned to Marshall, Missouri, because his son, who had been in school there, got involved in some difficulty. After his return, he worked at the St. Louis Post Office from June 29th to July 12th, 1968, and later returned there to work permanently from October 9th, 1968, down to the time of this hearing. To further demonstrate his intention to live in Reno, he produced rent receipts indicating that he had rented an apartment in Reno until December of 1969. He had a friend place a bid on the sale of a motel at Reno. He registered and voted in Reno and filed his federal income tax return there for the year 1968.

Mrs. Venator, the plaintiff, in support of her contention that defendant was never a bona fide resident of Nevada, pointed out that he had been employed in St. Louis by the Post Office for over thirty years and had never resigned or retired, and that after the divorce he returned to St. Louis to resume his employment at the Post Office where he was given a promotion with a substantial increase in annual salary. Plaintiff also suggests that defendant's subsequent marriage to another woman on October 19, 1968 here in Missouri is an indication that he only went to Nevada to be able to legitimize his relationship with this woman upon his return to Missouri.

The full faith and credit clause of the Constitution of the United States, Article IV, Section 1, is applicable to divorce decrees. And flowing out of this faith and credit required by the Constitution is the presumption that a court of general jurisdiction has authority to render the judgment in question and that the necessary jurisdiction was properly acquired. Trumbull v. Trumbull, 393 S.W.2d 82, 88 [6] (Mo.App.1965). Although this is a rebuttable presumption, the burden of assailing the validity of a divorce decree of

a sister state rests upon the person who attacks it. A want of domicile in the state where the decree is rendered, which is asserted for the purpose of avoiding the decree, must be established by clear and convincing evidence. *Trumbull, supra* at 89 [10, 11]. Since it is the question of intent that governs and this question is to be largely answered from the acts and utterances of the person whose domicile is under question (*Trumbull* at 91 [19]), our courts must be governed by the credible evidence in these areas.

■ Here the court made extensive findings of fact in support of its decree determining that no fraud was committed by the defendant and that he did establish a bona fide residence in the State of Nevada. Although our review of this court-tried case is de novo, we are instructed by Rule 73.01(d), V.A.M.R. that the judgment below "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Although the plaintiff can point to certain aspects of defendant's conduct which could raise doubts as to his good faith in establishing a residence in Nevada, there are also many aspects of his conduct recounted in the evidence which support the court's determination that he actually intended to move from Missouri to Nevada and establish his permanent place of abode there. We conclude there was sufficient competent evidence to support the decree. The contrary evidence, although sufficient to cast some doubt, was not so clear and convincing so as to destroy the domiciliary evidence supporting the validity of the decree; and we determine the judgment of the trial court sustaining this divorce decree not to be clearly erroneous.

Plaintiff also contends in this appeal that by giving full faith and credit to the divorce decree of the Nevada court, it has rendered a judgment against her which deprives her of her right to be heard on her claim for separate maintenance and thus deprives her of her rights to equal protection of the laws and due process guaranteed under the Constitution of the United States, Amendment XIV, Section 1, and the Missouri Constitution of 1945, Article I, Sections 2 and 10. As we previously stated, this case was appealed from the judgment of the court after a hearing on Count I of plaintiff's petition which only concerned itself with the validity of the Nevada divorce. No disposition has been made of her petition for separate maintenance. Although Missouri by statute apparently now entertains maintenance proceedings instituted here where a marriage has been dissolved by another court which lacked personal jurisdiction over an absent spouse [§ 452.335(1), Laws 1973; Urbanek v. Urbanek, 503 S.W.2d 434, 439 fn. 2 (Mo.App.1973)], the contention as now raised is premature and we do not address ourselves to any disposition of it at this time.

■ Finally, plaintiff contends that the trial court erred in admitting certain third-party communications because they were hearsay. The first of these communications consisted of a letter from the postmaster of St. Louis which acknowledged hearing from defendant that he might resign and suggested that he not act in haste but that he talk to the postmaster before making an irrevocable decision. The date of this letter was May 20, 1968, and it was posted in an envelope bearing postmark of the same date, addressed to defendant at Reno, Nevada. The second communication was on a "routing slip" purporting to be from D. H. Evans, Assistant Postmaster of Reno, Nevada, and addressed to defendant at St. Louis, Missouri, bearing date of July 22, 1968. It carried a message that the Reno, Nevada Post Office did not accept transfers. The third communication complained of was a letter from one identified as William Strock to defendant bearing date of August 17, 1968, indicating that the sender of the letter would bid on a motel to be sold at sheriff's sale in Reno, Nevada

about two weeks after the date of the letter, and that the sender would keep the defendant informed until he returned. Extra-judicial statements of third persons contained in letters and offered in evidence to prove the truth of the matters therein asserted must be excluded under the hearsay rule. State ex rel. Kansas City Power & Light Co. v. Parma, 467 S.W.2d 43, 45 [1] (Mo.1971); cases collected in 12 Mo.Dig., Evidence, On the other hand, letters of third persons "may be receivable in evidence where they are merely collateral, introductory, or incidental to, or in illustration of, the testimony which a witness gives, or may be received in evidence to establish what one's intention was or where he was at a given time." 29 Am.Jur.2d 985, Evidence, § 881. Thus in Replogle v. Replogle, 350 S.W.2d 735, 737 [2] (Mo.1961), where error was contended because of the admission of testimony as to what a party was told concerning the legal effect of probate administration, the court declared that it was properly admitted not for the truth of the contents of the communication but rather to show intent on the part of the claimant of ownership to possess under a claim of right. The communications here introduced, although being hearsay in the sense that their contents could not be used to prove any of the matters therein contained, were nevertheless admissible to show intent and residence. Viewed in the light of the other evidence that was properly admitted, we conclude that the third-party communications introduced were also merely incidental or collateral to properly admitted testimony. In this respect, even though such communications might be considered hearsay and the admission thereof erroneous, the judgment is supported by competent evidence properly admitted, and any error in the admission of the third-party communications will not cause a reversal in a court-tried case. Lockhart v. Lockhart, 271 S.W.2d 208, 213 [7] (Mo.App.1954); Crowley v. Crowley, 360 S.W.2d 293, 296 [4] (Mo. App.1962).

We conclude there was sufficient competent evidence to support the judgment of the trial court and that the judgment was not clearly erroneous. Judgment is affirmed.

DOWD, C. J., and SIMEONE and KELLY, JJ., concur.