**William C. BIERMANN and Patricia L. Biermann, Respondents,**

*v.*

**GUS SHAFFAR FORD, INC., Appellant.**

**No. 16768.**

Missouri Court of Appeals, Southern District, Division One.

March 11, 1991.

Lynn C. Rodgers, Hall, Ansley, Carmichael & Gardner, Springfield, for appellant.

John Cowherd, Stemmons & Stemmons, Mt. Vernon, for respondents.

CROW, Judge.

Plaintiffs William C. Biermann and Patricia L. Biermann sued defendant Gus Shaffar Ford, Inc., asserting two claims: (1) breach of a contract to sell plaintiffs an automobile, and (2) conversion of $1,000 deposited by plaintiffs toward the purchase price. Trial by jury produced (1) a verdict awarding plaintiffs $3,495 on the contract claim, and (2) a verdict awarding plaintiffs $40 actual damages[1] and $16,000 punitive damages on the conversion claim. The trial court entered judgment per the verdicts.

Defendant appeals, raising issues of evidentiary sufficiency, jury instructions, and admission and rejection of evidence.

In considering the assignments of error we follow the general rule that inasmuch as the verdicts and judgment were in favor of plaintiffs, we examine the evidence in the light most favorable to them, giving them the benefit of all reasonable inferences. *Haswell v. Liberty Mutual Insurance Co.*, 557 S.W.2d 628, 633[1] (Mo. banc 1977). We synopsize the evidence in that light.[2]

Plaintiffs are residents of Illinois. Plaintiff William C. Biermann ("Bill") is a truck driver.

On September 24, 1986, Bill was in Joplin, Missouri, making a delivery. He noticed a 1983 Cadillac priced at $13,900 on defendant's used car lot. Bill conversed with Randall G. Cooper, one of defendant's salesmen, about buying it and negotiated a reduction of the price to $10,900.

Bill departed and phoned Patricia, who was visiting her parents in Florida. Bill and Patricia decided that if defendant would sell the Cadillac for $10,500 they would buy it.

Bill returned to defendant's place of business the next day and offered Cooper $10,500. Cooper accepted. It was agreed plaintiffs would make a $1,000 downpayment and finance the remaining $9,500 through Ford Motor Credit Company. Bill phoned Patricia from defendant's office about assembling the necessary "credit information." Bill charged $200 of the downpayment on his VISA card. Patricia was to send a check for the remaining $800 "after the credit was checked out."

Later that day (September 25) Patricia phoned defendant's office from Florida, speaking first with Cooper and later with Lewis Charles Walters, defendant's used car manager. Patricia supplied the data required by defendant.

She returned to her home in Illinois September 30. The next day Bill, who had also arrived home, talked with Cooper by phone, informing him plaintiffs were sending the $800 check. Later that day Bill phoned Cooper to obtain the Cadillac's serial number. Cooper assured Bill "the financing had gone through." Bill told Cooper he would pick up the Cadillac "the weekend of the 11th."

Patricia prepared an $800 check payable to the order of defendant, writing the Cadillac's serial number on it. Plaintiffs mailed the check that day (October 1), requesting confirmation of delivery. Plaintiffs later received a receipt showing delivery to defendant October 3, 1986.

Defendant deposited the check October 6, 1986, in a bank account designated "Gus Shaffar Ford Inc., General Working Fund." That same day Walters phoned plaintiffs' residence to confirm they were coming for the Cadillac October 11. Patricia told Walters plaintiffs would arrive that morning. Patricia quoted Walters as saying, "Well, if you're running late, let me know, because I'll make sure somebody stays here for you."

---

1. Defendant refunded the $1,000 deposit to plaintiffs while the suit was pending.

2. The statement of facts in defendant's brief emphasizes the evidence favorable to defendant—an exercise in futility.

On the afternoon of October 7, Patricia received a call from Cooper. Patricia testified: "He said that they had sent the car out to be washed, and that he was out to lunch, and they had brought it back and put it in the front line, and another salesman had sold it.... He said ... we could, uh, put a stop on the check, our check. And I told him I would tell my husband, give my husband the message."

Bill, who was "on the road" when Cooper called, phoned Patricia later that day. Patricia told Bill what Cooper had said.

Bill phoned Cooper. Cooper told Bill the Cadillac had been sold. Bill consulted a lawyer in Illinois later that day.

Plaintiffs, accompanied by their daughter and her fiancee, arrived at defendant's place of business Saturday, October 11, 1986, shortly after 8:00 a.m. They went inside. Bill saw Walters and said he had come to pick up the Cadillac. Walters replied, "Oh, we sold that car."

Plaintiffs asked Walters "what he was going to do about it." Walters answered, "Nothing."

A salesman showed Bill a Lincoln Continental parked outside. Bill "had no interest in it." Bill's testimony continued:

"Q. Specifically what did you ask the salesman?

A. I asked him, 'What about my thousand dollars?'

Q. What did he say?

A. Nothing. He just walked off like I never had said a word.

Q. Did you have any other contact with any other employees of Gus Shaffar Ford that day?

A. No, I didn't.

Q. What happened at that point?

A. Well, we were kind of—when we went inside there were many, I don't know if they were salesmen or what they were, that kind of like surrounded us and, uh, made me feel a little intimidated, because I've got my wife and daughter and her friend along, and I certainly did not want to see anything happen...."

When the salesman walked away, plaintiffs departed with their daughter and her fiancee.

Plaintiffs filed suit March 3, 1987.

On April 30, 1987, defendant issued a $1,000 check payable to plaintiffs and their lawyer.

Plaintiffs established through testimony by Walters that the Cadillac was sold to "Mr. and Mrs. Woods" for $13,995. That transaction evidently occurred October 6, 1986.

■ The first of defendant's eight points relied on asserts plaintiffs failed to make a submissible case on the conversion claim. Defendant argues plaintiffs presented no evidence that the $1,000 was specifically identifiable as a specific chattel and that the return of a specific chattel was contemplated by the parties or demanded by plaintiffs. Furthermore, says defendant, plaintiffs presented no evidence the $1,000 was delivered to defendant for a specific purpose and diverted by defendant to some different purpose.

■ Defendant relies on the principle that conversion does not ordinarily lie for money represented by a general debt. *Dillard v. Payne*, 615 S.W.2d 53, 55[1] (Mo. 1981); *Breece v. Jett*, 556 S.W.2d 696, 710[8] (Mo.App.1977). As a general rule an action for conversion lies only for a specific chattel which has been wrongfully converted, hence a claim for money may not be asserted in conversion. *Gaffney v. Community Federal Savings and Loan Ass'n.*, 706 S.W.2d 530, 533[1] (Mo.App.1986); *Western Casualty & Surety Co. v. First State Bank of Bonne Terre*, 390 S.W.2d 913, 921–22[19] (Mo.App.1965).

However, the rule is otherwise as to funds placed in the custody of another for a specific purpose. Their diversion for other than such specified purpose subjects the holder to liability in conversion. *Dillard*, 615 S.W.2d at 55[2]; *Coleman v. Pioneer Studebaker, Inc.*, 403 S.W.2d 948, 951[3] (Mo.App.1966).

In *Dillard* a client brought a conversion action against two lawyers, alleging (1) he employed them to represent him in a law-

suit on a contingent fee basis, (2) he deposited $300 with them to be held in a "trust account" for paying expenses in the suit, (3) $10 of the deposit was spent, (4) the lawyers withdrew from representing him without filing the suit, and (5) the lawyers converted the remaining $290 to their own use. The client prayed for $290 actual damages, together with punitive damages. The lawyers paid $290 into the trial court, and judgment was entered for the client in that amount. On motion of the lawyers, the claim for punitive damages was stricken.

On appeal the Supreme Court of Missouri held the petition adequately alleged a fund belonging to the client which was placed in custody of the lawyers for a particular purpose and the diversion by the lawyers of such fund to their own use. 615 S.W.2d at 55. Citing *Coleman*, 403 S.W.2d 948, and other authorities, the Supreme Court held the petition stated a claim for conversion. 615 S.W.2d at 55. The order striking the claim for punitive damages was reversed and the cause was remanded. *Id.*

*Coleman*, relied on in *Dillard*, is remarkably similar to the instant case. In *Coleman* a customer deposited $55 with an automobile dealer toward the purchase of an automobile. The customer was thereafter told the car had been sold. He demanded his money back. A salesman tried to sell the customer a different car. The customer insisted his deposit be returned. He was told "the guy that unlocked the safe was not there." Subsequent demands for return of the deposit were spurned by the dealer. The customer sued in conversion, obtaining judgment for $55 compensatory damages and $2,500 punitive damages. On appeal the court held it was beyond question that the customer's money was converted by the dealer "without even a scintilla of justification." 403 S.W.2d at 951. In upholding the award of punitive damages the court stated it was apparent the dealer "acted knowingly and with intent to convert [the customer's] money wrongfully, without any possible justification or valid claim thereto." *Id.* at 952.

Defendant offers no persuasive reason why *Coleman* does not control here. Defendant's only effort to distinguish *Coleman* is that the dealer there affirmatively refused to refund the deposit despite repeated demands by the customer. Defendant maintains that here, plaintiffs never demanded return of the deposit.

We disagree. Plaintiffs' evidence was that when Walters told them October 11, 1986, that the Cadillac had been sold, plaintiffs asked what he was going to do about it. Walters replied, "Nothing." Bill testified that when he asked one of defendant's salesmen about the $1,000, the salesman walked away as if Bill had said nothing.

Defendant argues there was no evidence to support a finding that the salesman heard Bill. That argument ignores the rule that a reviewing court views the evidence in the light most favorable to the verdict. *Thomas v. Jones*, 409 S.W.2d 131, 134[2] (Mo.1966). So viewed, the evidence was sufficient to support a finding that the salesman heard Bill and ignored him.

■ Defendant concedes the $1,000 was a deposit on a specific automobile which defendant thereafter sold to another buyer. However, says defendant, it did not appropriate the deposit to its own use. Defendant asserts the deposit remained in defendant's account until the refund check was issued April 30, 1987.

The argument is meritless. As reported earlier, plaintiffs' $800 check was deposited in defendant's "General Working Fund" account. The title implies the account is not a trust account where defendant preserves funds belonging to others. The clear inference is that the $800 deposited by plaintiffs by check and the earlier $200 deposited by plaintiffs by VISA card were placed in an account used by defendant for its own purposes. The evidence on this element was at least as strong as that in *Dillard* and *Coleman*. We hold the evidence was sufficient to support a finding that defendant diverted plaintiffs' deposit for a purpose other than that for which it was made. Indeed, once the Cadillac was sold to the Woodses, the purpose of the deposit could no longer be fulfilled. Plaintiffs never

agreed defendant could use the deposit for any other purpose. Defendant had the use of the money for six and a half months after October 11, 1986, and made restitution only after plaintiffs sued. Defendant's first point is denied.

Defendant's second point attacks Instruction 13, the verdict-directing instruction on the conversion claim. That instruction, a "Not in MAI" instruction, read:

"Your verdict must be for Plaintiffs William C. Biermann and Patricia L. Biermann if you believe:

First, Plaintiffs William C. Biermann and Patricia L. Biermann transferred $1,000.00 to Defendant Gus Shaffar Ford, Inc. as a down payment on a 1983 Cadillac Sedan DeVille; and

Second, after the car was sold to other persons, Plaintiffs William C. Biermann and Patricia L. Biermann were entitled to return of the $1,000.00 down payment within a reasonable period of time; and

Third, Defendant Gus Shaffar Ford, Inc. failed to return the $1,000.00 down payment to Plaintiffs William C. Biermann and Patricia L. Biermann within a reasonable amount of time after the Plaintiffs William C. Biermann and Patricia L. Biermann demanded return of the $1,000.00 down payment; and

Fourth, Plaintiffs William C. Biermann and Patricia L. Biermann were thereby damaged."

Defendant maintains the instruction was erroneous in that it did not require the jury "to find each and every essential element of plaintiffs' cause of action for conversion." Among other defects, says defendant, the instruction failed to submit (a) plaintiffs demanded return of the deposit, or (b) the deposit was diverted by defendant to some purpose of defendant other than the purpose for which the deposit was made.

■ An essential element of a plaintiff's submission may not be omitted from a verdict-directing instruction where the issue is not conceded. *Gathright v. Pendegraft,* 433 S.W.2d 299, 311[15] (Mo.1968). However, an instruction is not erroneous when a finding of the essential element is necessarily implied from the other findings required. *Id.* at 311[16]; *Reed v. Sale Memorial Hospital and Clinic,* 698 S.W.2d 931, 938[14] (Mo.App.1985), *appeal after remand,* 741 S.W.2d 819 (Mo.App.1987).

■ Regarding attack "(b)," there was no dispute about what defendant did with plaintiffs' deposit. The testimony of defendant's "Secretary/Treasurer and Office Manager," together with the deposit slip, established plaintiffs' $800 check was deposited in defendant's "General Working Fund" account. It was also undisputed that defendant kept the deposit until defendant issued plaintiffs and their lawyer a $1,000 check April 30, 1987.

It was likewise undisputed that plaintiffs never authorized defendant to use the deposit for any purpose other than a downpayment on the Cadillac.

Paragraph "Third" of Instruction 13 submitted that defendant failed to return the deposit within a reasonable time after plaintiffs demanded its return. Given the undisputed evidence referred to in the two preceding paragraphs of this opinion, a finding for plaintiffs on the submission in paragraph "Third" of Instruction 13 necessarily implies a finding that defendant diverted the deposit to a purpose other than that for which it was made.

It is not erroneous to omit undisputed elements from an instruction. *Kozeny-Wagner, Inc. v. Shark,* 752 S.W.2d 889, 893[1] (Mo.App.1988); *Bender v. Colt Industries, Inc.,* 517 S.W.2d 705, 709[5] (Mo.App.1974). As there was no dispute (1) about what defendant did with plaintiffs' deposit, or (2) that plaintiffs never authorized defendant to use the deposit for anything except a downpayment on the Cadillac, we hold Instruction 13 was not erroneous in failing to submit that defendant diverted the deposit to some purpose other than that for which it was made. Defendant's attack "(b)" on Instruction 13 is without merit.

■ Defendant's attack "(a)" on Instruction 13, as noted earlier, is that it failed to submit that plaintiffs demanded return of

the deposit. Assuming, without deciding, that submission of this issue was essential, we find no basis for reversal.

The issue of demand is addressed in paragraph "Third" of Instruction 13. Defendant insists such paragraph "does not require the jury to find, as a matter of fact, that a demand for return of the deposit was made, but rather, assumes that fact." Given the wording of paragraph "Third," defendant has an arguable basis for this contention.

However, defendant did not identify this alleged defect for the trial court during the instruction conference. Defendant's objections to Instruction 13 included this:

"And as written it's fatally defective in that there is no evidence whatsoever, uh, that, uh, there was ever any demand for the return of the $1,000 down payment. The best that can be said is that there was some comment made to some salesman—no showing that the salesman was in any way in close proximity or was, even acknowledged having heard the comment about money, and there was no evidence whatsoever that there was a demand of return of the $1,000 *as submitted in Instruction Number 13.*" (Emphasis added.)

This comment, it seems to us, attacks Instruction 13 because it *submits* the issue of demand without evidentiary support. That is contrary to defendant's position here, i.e., that the instruction *fails* to submit the issue of demand.

■ A party is bound on appeal by the position taken in the trial court. *Williams v. St. Louis Public Service Co.*, 363 Mo. 625, 253 S.W.2d 97, 104[9] (banc 1952); *Douglas v. Farrow*, 334 S.W.2d 234, 240[6] (Mo.1960). Furthermore, although objections to instructions at trial are not required to preserve claims of error, Rule 70.03,[3] failure to raise the issue may be considered in determining whether an erroneous instruction is prejudicial. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682[5] (Mo. banc 1986). If a defect is not readily apparent to counsel preparing to argue the case, it is unlikely the jury will be confused or misled. *Id.; Hudson v. Carr*, 668 S.W.2d 68, 72 (Mo. banc 1984).

The alleged defect about which defendant complains in attack "(a)" was evidently not apparent to defendant's lawyer when he was preparing to argue the case at trial. Consequently, it is unlikely the jury was confused or misled.

Finally, plaintiffs point out that at defendant's request the trial court gave Instruction 14, a converse to Instruction 13. Instruction 14 read:

"Your verdict must be for Gus Shaffer [sic] Ford, Inc. unless you believe Plaintiffs William C. Biermann and Patricia L. Biermann demanded return of the $1,000.00 down payment."

This instruction clearly told the jurors they must find for defendant on the conversion claim unless they believed plaintiffs demanded return of the deposit.

For the reasons set forth above we hold defendant's attack "(a)" on Instruction 13 presents no basis for reversal. We have considered the other complaints about Instruction 13 in defendant's second point and find no merit in them. Defendant's second point is denied.

Defendant's third point avers the trial court erred in submitting the issue of punitive damages to the jury. Defendant separates the point into two components, "A" and "B."

Component A argues plaintiffs failed to make a submissible case on the tort of conversion (or any other tort); hence punitive damages were not recoverable. In denying defendant's first point we held plaintiffs made a submissible case on conversion. That holding disposes of component A.

■ Component B alleges plaintiffs failed to present sufficient evidence to support a finding that defendant's conduct was outrageous or that defendant acted with an evil motive or reckless indifference to plaintiffs' rights.

---

**3.** Rule references are to Missouri Rules of Civil Procedure (1991).

The issue of punitive damages was submitted by Instruction 16. It faithfully tracked MAI 10.01 [1990 Revision], adopted by the Supreme Court of Missouri in *Burnett v. Griffith*, 769 S.W.2d 780, 789–90[12] (Mo. banc 1989). Instruction 16 authorized the jury to award plaintiffs punitive damages if the jury believed defendant's conduct as submitted in Instruction 13 (quoted earlier) was outrageous because of defendant's evil motive or reckless indifference to the rights of others.

In support of component B defendant relies on the statement in *Gaffney*, 706 S.W.2d at 535, that if a party acts in good faith on the honest belief his act is lawful, he is not liable for punitive damages even though he may have been mistaken as to the legality of his act. Defendant emphasizes that plaintiffs testified Walters told them defendant had a "legal right" to sell the Cadillac to others. However, we note Walters never said defendant had a right to keep plaintiffs' deposit. That was the conduct on which the submission of punitive damages was based. Defendant offered no plausible reason for keeping plaintiffs' deposit from October 11, 1986, until April 30, 1987. The jury could have reasonably found, as it obviously did, that such conduct was outrageous and manifested an evil motive or reckless indifference to plaintiffs' rights.

Defendant also argues plaintiffs offered no evidence that defendant refused to refund the deposit. We rejected that contention in adjudicating defendant's first point. Component B of defendant's third point is denied.

Defendant's fourth point attacks Instruction 15, the compensatory damages instruction on the conversion claim. It read:

"If you find in favor of Plaintiffs William C. Biermann and Patricia L. Biermann, then you must award Plaintiffs William C. Biermann and Patricia L. Biermann such sum as you find from the evidence to be the value of possession of the $1,000.00 down payment from October 11, 1986 to April 30, 1987."

Defendant's fourth point, like the third, consists of two components, "A" and "B."

Component A asserts MAI 4.01 [1980 Revision] was the applicable damages instruction on the conversion claim and Instruction 15 was an impermissible and erroneous modification of 4.01. Defendant reminds us that if a Missouri Approved Instruction is applicable, it must be given to the exclusion of any other on the same subject. Rule 70.02(b); *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 206[7] (Mo. banc 1983).

Defendant argues Instruction 15, read in conjunction with Instruction 13 (quoted earlier), was prejudicial in that it constitutes a declaration by the trial court that plaintiffs demanded return of their deposit October 11, 1986, and their loss persisted until April 30, 1987. Defendant says this "in effect directed a verdict for the specific period of time referenced in" Instruction 15. Furthermore, complains defendant, the prejudice was enhanced because the trial court rejected defendant's evidence that a refund was tendered before April 30, 1987 (a ruling attacked by defendant's sixth and seventh points, *infra*).

Plaintiffs dispute defendant's assertion that MAI 4.01 was applicable to the conversion claim. Plaintiffs cite *Breece*, 556 S.W.2d at 710[10], which holds there is no particular damage instruction in MAI relating to conversion and neither MAI 4.01 nor 4.02 applies to a conversion claim. Plaintiffs point out that where property is returned to its owner after conversion the measure of damages is the difference between the value of the property at the time of the conversion and the value at the time of the return, plus the reasonable value of the loss of use of the property. *Hoffman Management Corp. v. S.L.C. of North America, Inc.*, 800 S.W.2d 755, 762[8] (Mo. App.1990); *Lacks v. R. Rowland & Co., Inc.*, 718 S.W.2d 513, 520[12] (Mo.App. 1986); *Vetter v. Browne*, 231 Mo.App. 1147, 85 S.W.2d 197, 199 (1935).

■ The general rule is that in actions of trover for the conversion of property, interest on the value of the property converted may be recovered. *Independence Flying Service, Inc. v. Ailshire*, 409 S.W.2d 628, 632[7] (Mo.1966); *Hammons v. Eisert*, 745

S.W.2d 253, 259[5] (Mo.App.1988). The rate of interest allowable is that prescribed by § 408.020, RSMo 1986 (nine percent per annum when no other rate is agreed upon). *Hammons,* 745 S.W.2d at 259; *Southern Missouri Bank v. Fogle,* 738 S.W.2d 153, 158[9] (Mo.App.1987).

Plaintiffs' lawyer argued to the jury that interest at nine percent per annum on $1,000 from October 11, 1986, to April 30, 1987, is $49.45. The jury, as reported in the first paragraph of this opinion, awarded $40.

Defendant's contention that Instruction 15, read in conjunction with Instruction 13, declared plaintiffs demanded return of the deposit October 11, 1986, and "directed a verdict" for the period between that date and April 30, 1987, was not made at the instruction conference and does not appear in defendant's motion for new trial. Consequently, it is not preserved for review. *Hanff v. St. Louis Public Service Co.,* 355 S.W.2d 922, 926[4] (Mo.1962); *Belter v. Crouch Brothers, Inc.,* 554 S.W.2d 562, 563 (Mo.App.1977).

If defendant is arguing Instruction 15 alone "directed a verdict" for the period between October 11, 1986, and April 30, 1987, such argument is without merit. Instruction 15 did not direct a verdict. It merely told the jurors that *if* they found for plaintiffs on the conversion claim, they must award plaintiffs such sum as the jurors found from the evidence to be the value of possession of the $1,000 deposit from October 11, 1986, to April 30, 1987. It was undisputed that defendant had plaintiffs' deposit October 11, 1986, and did not issue the refund check until April 30, 1987.

The ultimate test of an instruction not in MAI is whether it follows the substantive law and can be readily understood. *Bayne v. Jenkins,* 593 S.W.2d 519, 530[9] (Mo. banc 1980). The verdict on the conversion claim demonstrates the jury understood the measure of compensatory damages.

Furthermore, it is evident defendant was not prejudiced by Instruction 15. The compensatory damages awarded plaintiffs on the conversion claim were a few dollars less than the sum allowable under § 408.020.

Defendant's contention that the date April 30, 1987, in Instruction 15 was prejudicial because the trial court rejected evidence that defendant tendered a refund at an earlier date would be meritorious only if the rejection of such evidence was erroneous. As explained *infra,* we find no error in the rejection of that evidence. Component A of defendant's fourth point is denied.

Component B avers there was no evidentiary support for submission of the dates in Instruction 15. That contention is patently meritless. As noted above, it was undisputed that defendant had plaintiffs' deposit October 11, 1986, and did not issue the refund check until April 30, 1987.

Component B also faults Instruction 15 for failing to require a finding that plaintiffs "were actually deprived of use of their funds between October 11, 1986, and April 30, 1987." As observed earlier, it is not error to omit undisputed elements from an instruction. Plaintiffs obviously could not use their money while it was in defendant's possession. Component B of defendant's fourth point is denied.

Defendant's fifth point asserts the trial court erred in receiving evidence of defendant's net worth ($1,134,783 as of September 30, 1988) and taxable income for 1988 ($382,310). This point also consists of two components, "A" and "B."

Component A states such evidence was inadmissible in that plaintiffs failed to make a submissible case on any cause of action which would support an award of punitive damages. In denying defendant's first point we held plaintiffs made a submissible case on conversion. That holding disposes of component A.

Component B concedes that if a submissible case was made on conversion, evidence of defendant's net worth was admissible. Defendant maintains, however, it was error to receive evidence of defendant's taxable income for 1988. Defendant argues taxable income for any one year

provides no basis for a determination of net worth.

A tortfeasor's worth or financial condition is a consideration in determining the amount of punitive damages to be awarded. *Beggs v. Universal C.I.T. Credit Corp.*, 409 S.W.2d 719, 724[13] (Mo.1966). In *Wisner v. S.S. Kresge Co.*, 465 S.W.2d 666 (Mo.App.1971), there was evidence of the tortfeasor's gross annual sales, net annual income, and net worth. While no error was assigned regarding admission of the evidence of net income, the appellate court relied on all financial evidence in holding the punitive damages were not excessive. *Id.* at 670.

We agree it is possible to have a high taxable income for one year and still have little net worth. That, however, was not the situation here. Defendant's net worth was nearly three times its taxable income for 1988.

As a general rule, error in the admission of evidence is not grounds for reversal if such evidence does not prejudice the complaining party or adversely affect the jury in reaching its verdict. *Davis v. Mathews*, 649 S.W.2d 256, 259[3] (Mo.App.1983). As defendant's net worth was almost treble its taxable income for 1988, we find no prejudice to defendant in the receipt in evidence of the latter figure. Whether evidence of taxable income is admissible in all instances where punitive damages are in issue is a question we need not, and do not, decide. Component B of defendant's fifth point is without merit.

Defendant's sixth point avers the trial court erred in refusing to receive in evidence two exhibits identified by defendant's lawyer as letters he had written plaintiffs' lawyer. The first was dated March 20, 1987, the second May 4, 1987. Defendant says the exhibits would have shown it tendered refund of plaintiffs' deposit March 18, 1987, which was relevant to the issue of "any damages to which plaintiffs might have been entitled as submitted in Instruction Number 15" (the compensatory damages instruction on the conversion claim). As noted earlier, the jury assessed those damages at $40.

Among other things, the letter of March 20, 1987, said defendant had "searched its records and confirmed that no request has ever been made for return or refund of the down-payment." Such statement is hearsay and inadmissible. *Venator v. Venator*, 512 S.W.2d 451, 454–55 (Mo.App.1974). If several facts are included in an offer of proof, some admissible and others inadmissible, then the whole, if properly objected to, is inadmissible. *Lott v. Kjar*, 378 S.W.2d 480, 483–84[1] (Mo.1964). This rule disposes of defendant's complaint regarding the rejection of the March 20, 1987, letter, hence we need not determine whether any portion of it would have been admissible if offered separately.

The letter of May 4, 1987, accompanied the $1,000 check issued April 30, 1987, by defendant to plaintiffs and their lawyer. However, that letter also referred to a motion for sanctions regarding certain interrogatories and requests for production, and a hearing on other pending motions. Those matters were immaterial to any issue before the jury. Defendant offered the letter in toto. Its rejection by the trial court was not error. *Lott*, 378 S.W.2d at 483–84[1]. Defendant's sixth point is denied.

Defendant's seventh point alleges the trial court erred in barring defendant's lawyer from reading to the jury three requests for admissions and plaintiffs' responses thereto.

The first requested admission concerned a purported verbal offer by defendant's lawyer to plaintiffs' lawyer March 18, 1987, to send a refund check for the $1,000 deposit. Plaintiffs denied the requested admission, stating their lawyer regarded the discussion "as an offer of compromise."

The second requested admission concerned the letter of March 20, 1987 (mentioned in our discussion of defendant's sixth point). Plaintiffs' response to the requested admission was a denial stating the letter was construed by their lawyer as an offer of compromise, the terms of which

had been rejected in the March 18, 1987, conversation.

As we understand it, defendant contends the first and second requested admissions and plaintiffs' responses would have shown the jury defendant tendered a refund of plaintiffs' deposit prior to April 30, 1987.

We disagree. The first two requested admissions and plaintiffs' responses would have informed the jury plaintiffs' lawyer regarded the overtures of defendant's lawyer as offers of compromise, not efforts to make an unconditional refund of the deposit.

■ Offers of compromise of an existing controversy are privileged and inadmissible, and the offeree may object to evidence as to another's offer of compromise. *Chase Third Century Leasing Co., Inc. v. Williams,* 782 S.W.2d 408, 412[7] (Mo.App. 1989); *Vinyard v. Herman,* 578 S.W.2d 938, 942–43[8] (Mo.App.1979). A trial court has considerable discretion in the exclusion of evidence; unless there was an abuse of that discretion its action will not be grounds for reversal. *Karashin,* 653 S.W.2d at 205[3].

We hold the trial court did not abuse its discretion in barring defendant's lawyer from reading the first two requested admissions and plaintiffs' responses.

■ Alternatively, defendant argues it should have been allowed to read the jury the requested admissions "and simply show the response as admitted, in view of the evasive and incomplete responses made thereto." This contention does not appear in any of defendant's "Points Relied On." A reviewing court is obliged to determine only those questions stated in the points relied on; issues which an appellant alludes to only in the argument portion of the brief are not presented for review. *Landoll by Landoll v. Dovell,* 779 S.W.2d 621, 627[9] (Mo.App.1989); *Brokaw v. Brokaw,* 492 S.W.2d 859, 860–61[4] (Mo.App.1973).

The third requested admission, to which we now turn, concerned the authenticity of the letter of March 20, 1987. In denying defendant's sixth point we held the trial court did not err in rejecting defendant's

offer of that letter. Consequently, there could be no error in barring defendant's lawyer from reading the third requested admission and plaintiffs' response. Defendant's seventh point is denied.

■ Defendant's final point states the trial court erred in excluding testimony that the $1,000 check issued April 30, 1987, by defendant payable to plaintiffs and their lawyer was never cashed "and was reissued during the summer of 1989." Defendant maintains such testimony tended to prove plaintiffs were not serious about seeking refund of the deposit, which was material to the issues of defendant's good faith, plaintiffs' credibility, and any damages plaintiffs may have sustained.

The point flagrantly misstates the record. One of defendant's employees testified without objection that the check issued April 30, 1987, was never cashed and was ultimately returned to defendant by its lawyer. The witness further testified a new $1,000 check was issued later. Only the date of the new check was excluded. Plaintiffs' lawyer objected that such evidence was inadmissible in that it opened up issues regarding the reasons plaintiffs did not accept the original check.

Defendant's contention that the proffered testimony would have demonstrated plaintiffs were not serious about seeking a refund is ludicrous, as plaintiffs continued to pursue the suit after both checks had been issued. Furthermore, Instruction 15 established April 30, 1987, as the cutoff date for plaintiffs' compensatory damages. Tender of a refund after that date could not have reduced plaintiffs' compensatory damages. Defendant's final point is denied.

Judgment affirmed.

MAUS, P.J., and PREWITT, J., concur.